McFarland, J.,
delivered the opinion of the Court.
The question presented in these cases is as to the legality of the taxes assessed for State, county and municipal purposes, against the stock owned by the parties in the national banks of Nashville. The act of Congress in regard to national banks, approved *390 June, 1864, contains the following proviso: “That nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation, in the assessment of taxes imposed by or under State authority, at the place where such bank is located, and not elsewhere; but not at a greater rate, than is assessed upon other moneyed capital in the hands of individual citizens of such State. Provided further, that the tax so imposed under the laws of any State upon the shares of any of the- associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks originated under the authority of the State where such association is located.”
By the act approved 10th February, 1868, it was enacted that the words “ place where the bank is located and not elsewhere,” used in the first named act, shall be construed and held to mean the State within which the bank is located, and'that the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banks located within said State, subject to the restriction that the taxation shall not be at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of such State, and provided always that the shares of any national bank owned by non-residents of any State shall be taxed in the city or town where said bank is located, and not elsewhere.
The question was soon made, that as the national *391 banks were founded upon United States bonds or securities, which are exempt from taxation under State authority, an attempt to tax the shares of the individual stockholders was merely taxing the, bonds in another form; but it was held by the Supreme Court of the United States, that although the bank could' not be taxed, yet the shares of the stockholders might be included in the valuation of personal property taxable under State laws, subject to certain restrictions imposed by the forty-first section of said act. See the case of Van Allen v. Assessors, 3 Wall., 573. This decision has been several times reaffirmed by the same Court, and may now be considered as definitely settled. See People v. Commissioners, 4 Wall., 244; Austin v. The Aldermen, 7 Wall., 694; National Bank v. The Commonwealth, 9 Wall., 353. So the power of the State to impose the tax upon the shares of the stockholders as personal property is no longer questionable, provided the laws of the State imposing the tax do not violate the limitations and restrictions imposed by the act of Congress referred to; and whether the laws of this State under which these taxes have been assessed violate these limitations, is the question.
We will proceed then to inquire as to the state of our law at the time this tax was assessed.
The Code, s. 541, provides that “the following property shall be taxable,, except such as is declared exempt from taxation by the next section; ” and in subsections 9 and 10 are enumerated all investments of inhabitants of this State in stocks out of the State, and “all other stocks.”
*392 By the act passed 13th March, 1868, it was enacted “that all interest-paying State, county and corporation bonds owned by citizens of this State, whether deposited in or out of the State, shall be taxed forty cents on the one hundred dollars for State purposes,” etc.
By this act, a tax was imposed upon the business of banking, but this was changed by the act passed 1st March, 1869, the 9th section of which is as follows:
“Be it further enacted, That no tax shall hereafter be assessed upon the capital of any bank or banking association, or any other joint stock company, organized under the authority of this State or the United States. But the stockholders in such banks and banking associations, or other corporations, shall be assessed and taxed on the value of their shares of stock therein. Said shares shall be included in the valuation of the personal property of such stockholders in the assessment of State, county or municipal taxes, at the place, town, ward, or district, where such bank or banking associations or other corporation is located, and not elsewhere, whether the said stockholder reside in said place, town, ward, or district, or not, but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in the State,” etc.
By the 19th section of this act, it was enacted, “That Sec. 1 of an act passed 13th of March, 1868, be so amended as to exempt all interest-paying State, county, or corporation bonds, owned by citizens of this State from taxation.”
*393 Next the act of the 25th of February, 1870, was passed, the first section of which enumerates the property that shall be valued, assessed, and subject to taxation for State and county purposes, and in this are included, (without reciting the whole section) “ all moneys secured by mortgage or deed of trust, moneys in actual or constructive possession, money due from solvent debtors, whether by bond, bill single, promissory note, or judgment; also, all articles of agreement for the payment of money, and accounts on solvent parties bearing interest, owned or possessed by any person or persons whatever, except notes or bills for work and 'labor done; also all shares of stock in any bank, institution, or company, now or hereafter incorporated by or in pursuance of any law of this State or any other State, and all public bonds or stocks whatsoever, other than bonds of the United. States which by the laws of the United States are expressly exempt from taxation; all incomes from bonds and stocks which are exempted from taxation by the laws of the United States or the State of Tennessee,” etc.
By the 2d section it is provided that the rate of taxation upon all the property enumerated in the 1st section shall be twenty cents on the $100. It is under these several • acts that the taxes in question are claimed.
For the parties resisting the tax it is argued, that these acts are all merely amendatory of- the Code, and that they must be construed together.
That the 19th section of the act of the 1st of March, 1869, repealed the 1st section -of the act of the *394 13th of March, 1868, thereby exempting from taxation, all interest-paying State, county, and corporation bonds, owned by citizens of this State, and that this 19th section of the act of 1st of March, 1869, is not repealed by the 1st section of the act of 25th of February, 1870, above quoted, and that “interest-paying State, county, or corporation bonds, owned by citizens of this State/’ still remained exempt from taxation after the passage of the act of 25th of February, 1870; and that from this it results that a greater rate of taxes was imposed upon stock in the national banks, than upon other moneyed capital in the hands of individual citizens of said State, to wit: these interest-paying State, county, or corporation bonds, which were exempted altogether from taxation.
The object had in view by the passage of the act authorizing national banks, was to create a national currency secured by United States bonds. The successful operation of these banks it was supposed would materially aid the government itself in its various departments, and as these banks were to be located in the various States, and to be subject to taxation, it was provided, in order to protect this from crippling the successful operation of the banks, that in levying this tax there should be no unjust discrimination against the capital thus invested, and in favor of other moneyed capital otherwise invested and which by the laws of the State was subject to taxation; but that when a tax was imposed by State authority upon such bank stock it should not be at a greater rate than was imposed upon any other - moneyed capital in the *395 hands of its own citizens which by the laws of the State was taxable.
It will be seen by reference to the act of the 25th of February,' 1870, before referred to, that great care and particularity is used in enumerating the property subject to taxation, and in this is included all money in whatever form it may be, and all stocks of every character, and the rate of taxation fixed upon all property which by the act is made taxable, is twenty cents on the $100. It is not denied that so far as taxes are imposed at all the rate of taxation upon these stocks and all stocks and capital is precisely the same, but the argument is that there was a large portion of moneyed capital of citizens of this State invested in State, county, and corporation bonds that are exempted altogether, and therefore that the tax imposed must be held illegal.
The objection is not that a higher rate of taxation has been imposed upon this than upon other capital, but that a part of the money capital in the hands of citizens of this State has been exempted altogether. This raises the question whether or not the State Legislature may exempt from taxation such property or stocks as its own civil policy may demand, without losing the right to impose a tax upon these bank stocks equal in rate to the tax imposed upon its other taxable property? In other words, does the proviso to the act of Congress before referred to require as a condition upon which this tax may be imposed, not only that the rate of the tax should not be greater than upon other moneyed capital, but also that all *396 property or moneyed capital in whatever shape shall be made taxable?
This question was discussed in the case of The People v. Commissioners, 4 Wall., 255.
In that case it appeared that no deduction was made from the value of the shares of the several shareholders on account of investments by the banks in any securities of the United States, and that such deduction was made in assessments upon insurance companies and individuals. Mr. Justice Nelson, in delivering the opinion of the Court, says: — “The answer is that upon a true construction of this clause of the act, the meaning and intent of the lawmakers were that the rate of taxation of the shares should be the same as or not greater than upon the moneyed capital of the individual citizens which was subject or liable to taxation; that is, no greater proportion or per centage of tax in the valuation of the shares should be levied than upon other moneyed taxable capital in the hands of the citizens. This rule seems to be as effectual a test to prevent unjust discrimination against the shareholders as could well be devised. It embraces a class which constitutes the body politic of the State, who make its laws and provide for its taxes. These can not be greater than the citizens impose upon themselves. It is known as sound policy that in every well regulated and enlightened state or government, certain descriptions of property, and also certain institutions, such as churches, hospitals, academies, cemeteries, and the like, are exempt from taxation; but these exemptions have never been regarded as disturbing the rates *397 of taxation, even where the fundamental law had ordained that it should be uniform.”
It would seem to be clear that if the exceptions enumerated could be made without disturbing the rates of taxation, any other exemptions that sound policy might dictate might 'also be made, provided it were within the constitutional power of the Legislature. The policy of the State exempting its own bonds is fully justified by the course of the Federal Government upon the same subject.
The additional burden thrown upon the remaining taxable property by these exemptions falls upon all the other property and citizens alike. The additional burden falling upon this bank stock is no greater than falls upon every species of taxable property in the State.
In the case of Lionberger v. House, 9 Wall., 468, writ of error to the Supreme Court of Missouri, it was contended that the tax upon the shares in a national bank was in violation of the restriction in the act of Congress, because there were • two State banks chartered in 1857, which by the provisions of their charter could not be taxed higher than one per cent., whereas the assessments upon the shares of the others was nearly two per cent.; but the Court held this position untenable, and that all that was meant by the proviso was that the States, in imposing the tax, should, as far as they had the power to do so, impose the tax in like manner as they imposed it upon their own banks.
It will be observed that this case arose and was decided under the provisions of the act of June, 1864> *398 in which restrictions were contained not found in the act of 1868. That is to say, the first named act, in addition to the requirement that the tax should not be at a greater rate than was imposed upon other moneyed capital in the hands of the individual citizen of such State, contained' also a proviso that the tax should not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State. This latter proviso is .omitted ' in the act of 1868, and the only restriction in this regard by the latter act, is that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. See 9 Wall. 474, 475.
The Constitution of this State in force at the time these acts were passed, provided that “all property shall be taxed according to its value, that value to' be ascertained in such manner as the Legislature shall direct, so that the same shall be equal and uniform throughout the State. That no species of property from which a tax may be collected, shall be taxed higher than any other species of property of equal value.”
Yet it has never been held that this provision was violated by the exemptions in question, or others of a like character. When the right of the Legislature is conceded to make exemptions, it would seem that that body must be the judge of the policy or propriety of the exemptions made. We do not say, however, that these might not be carried to a point beyond this power.
*399 What, however, would be the result should the Legislature see proper to exempt property from taxation, in violation of the spirit of the Constitution above quoted, we do not say. Would it result that all the tax imposed by the act upon other property would therefore be illegal, and not susceptible of collection? This would be to give an unusual effect to an unconstitutional law, — that because certain property is improperly exempted, therefore no- tax can be collected from other property that is properly taxed. Would not a more reasonable view be that the part of the law providing for the improper exemption should be declared void.
If the argument be sound that the exemption of these bonds was a violation of the condition in the act of Congress upon which the right to tax national bank stock is founded, it would seem to follow that the exemption is also in violation of that ' part of our State Constitution above quoted, requiring equal taxation; and if this be true, then it would result that the exemption was in violation of the Constitution, and should have been disregarded altogether. And this would certainly be more rational than to defeat the entire tax law because of the fact that a part of it is unconstitutional.
We are of opinion that the true construction of this act of Congress is that the State Legislatures shall not have the power to tax the national bank stocks at a higher rate than is imposed upon the moneyed capital in the hands of its individual citizens by the general tax law, but that this does not prohibit the *400 State .from making such exemptions as its civil policy may demand, within the power of its own Constitution; for the act of Congress was certainly enacted with regard to this power of the State Legislatures.
The act of the 25th of February, 1870, above quoted, is very explicit in the enumeration of all moneyed capital, and but one rate of taxation is prescribed, and if the act had even prescribed that these stocks should be taxed at a higher rate than was imposed by the act upon other property, we should even then be strongly inclined to hold the tax void only to the extent of the excess over the regular rate upon other property. This would certainly be more reasonable than to hold that because the Legislature had failed to make the tax exactly uniform, therefore the stock should be relieved from taxation altogether. This was so held in the case of Frazier v. Seeben, 16 Ohio.
The result of a contrary holding would be that these bank stocks should be relieved from taxation altogether in this State for the inadvertence of the Legislature, while in other States they would have the tax to pay. See 55 Penn., 45; 31 N. J. 399.
We are of the opinion that the tax in question was lawfully imposed by the act of February, 1870, and the acts of which it is amendatory, without regard to the question whether the 1st section of said act repeals the 19th section of the act of March 1, 1869, exempting State, county or corporation bonds, or not; and this makes it unncessary to decide this question.
*401 The next question argued is, that if it be even conceded that the Legislature had the power to levy the tax in question for State purposes, yet the corporate authorities of the city of Nashville had no power to assess and collect a tax upon this stock for municipal purposes, for the reason that the act of Congress before referred to does ,not authorize it.
It is perhaps not strictly accurate to say, as has been said in argument, that the power to impose this tax is derived from the act of Congress. The power to impose taxes is a power inherent in the Government in its sovereign capacity. The Constitution defines this power and gives general directions as to the manner of exercising it, and bank stocks are. expressly enumerated in the Constitution as taxable.
The Constitution also provides that the General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes, for county and corporation purposes respectively, in such manner as shall be prescribed by law, and that all property shall be taxed according to its value, upon the principles established in regard to State taxation. The act of Congress before referred to contains the following proviso: “ That nothing in this act shall be construed to prevent all the shares in any of the said associations held by any person or body corporate from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority, at the place where said bank is located and not elsewhere, provided,” etc.
*402 This we think, is not giving tbe State by the act of Congress, the power to impose the tax, but is a proviso, that the act in question was not intended to interfere with the power already possessed by the State to impose the tax, • but that the power should still remain, with certain restrictions however that Congress might lawfully impose. Congress did not see proper to undertake to interfere with the power of the State to impose these taxes, by exempting the stock altogether, but simply to throw certain restrictions around the exercise of that power, in order to preserve these institutions, intended to maintain the public credit, from being destroyed by State taxation.
The question is, how far the restriction or limitation of the power or exemption is intended to go. The act of Congress was certainly passed in view of the power of the State under its own Constitution and laws to impose the tax, and in view of the different purposes for which the tax might be imposed. We cannot see any reason why Congress would permit the State tax to be imposed, and at the same time exempt the stock from taxation for county and municipal purposes. If this species of property should bear its just proportion of State taxes, we can see no reason in principle why it should be exempted from its just proportion of municipal taxes.
These banks are certainly as much interested in maintaining a city government, and police regulations for their own protection, as the individual citizens, and should bear their' just part of the burden of maintaining them, unless they are exempted by some positive *403 law. Did Congress intend by tbe act in question to exempt these stocks from taxation for municipal purposes?
The language is, “that nothing in this act shall be construed, etc., to prevent all the shares, etc., from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority.”
We understand that the taxes imposed by the city authorities of Nashville are imposed “under State authority” — as much so as the State taxes proper. This proviso in the act of Congress was enacted with a view to the laws of the States, and to the fact that the cities and towns where the banks are usually located always maintain a city government by taxation; and we think it cannot be maintained successfully that Congress intended to exempt this stock from taxation for municipal purposes. The fact that the act contains also a proviso that nothing in it shall be construed to prevent real estate owned by such corporations from being taxed for State, county or municipal purposes, as other real estate, sustains this view.
We regard, furthermore, the question as settled by authority. We understand the question to have been involved and settled in the cases of The City of Utica v. Churchill et al., 33 New York, 161; The People ex rel. of R. L. Kennedy v. The Commissioners of the City of New York, 35 New York, 423; same ease, 4 Wal., 244; The People v. The Assessors of the City of Albany, 36 N. Y., 59; Monroe Savings Bank v. The City of Rochester, 37 N. Y., 365.
*404 No distinction seems to have been attempted in these cases between the power of the State to impose the tax for State purposes and the power to authorize counties, cities, and incorporated towns to impose a tax for county and municipal purposes, and the question in this view is not discussed. Upon principle we think there can be no distinction.
In the case of The Mayor of Nashville v. Thomas, 5 Col., 600, the taxes were assessed by the city of Nashville, and although the tax was held illegal because in the opinion of the Court the Legislature had not provided for the assessment of the taxes in accordance with the act of Congress, yet no intimation was given that under a proper law of the State the tax might not be assessed; but on the contrary, the Gourt expressly say that it might be done.
The only remaining questions are as to the place where the stock is taxable. Some of the parties reside in the city of Nashville; others reside in Davidson county, outside of Nashville; others again are residents of Tennessee, but not of Davidson county; and the question is, can the stock of the two latter classes be assessed for State, county and municipal purposes in the city of Nashville?
We think it may be safely assumed that previously to the act of 1st March, 1869, the settled law of this State was, that bank stock was taxable only in the county of the owner’s residence. It was so distinctly announced in the case of the Union Bank v. The State, 9 Yerg., 490; and although that case was decided upon other grounds, which probably made the decision *405 of tbis particular question unnecessary, yet the reasoning of tbe Court is entitled to great consideration: it follows from the nature of the property in question.
Under our laws personal property is taxable in the county where the .property is at the time of assessment. Code, 553.
Bank stock is not a legal right to portion any of the property or assets of the corporation, but only an immediate right to receive a share of the dividends as they are declared, and a remote right to a share of the effects upon the dissolution of the institution.
This stock or right is in the nature of a chose in action, and can have no locality on account of the location of the bank, but may be sold and transferred elsewhere, and for the purpose in question it would, under the law as it stood previously to the act of March 1st, 1869, follow the person of the owner.
The question was elaborately examined in the case of the Mayor of Nashville v. Thomas, and after a careful view of authorities, the Court arrived at the same conclusion. The same doctrine was held in the case of The City of Utica v. Churchill and others, 33 N. Y., 243. It was, however, held in that case that the Legislature might change this rule, which in that State had been done. Upon this question Denio, C. J., said: “ our laws prior to the enabling act, required that the taxation of personal property should be in the town or ward where the tax-payer resided. I was at first inclined to the opinion that the provision of the national banking law so often referred to, might *406 be sustained on account of its relation to the national banks which are within the sphere of Federal legislation. On further reflection, I have concluded that it would be more correct to hold that the effect of the proviso is to permit the States so to shape their laws of taxation, as to tax all the shareholders at the place where the bank is situated, as has been done by the enabling act.”
There may be authorities holding a different view, but we are content to follow the doctrine laid down in Union Bank v. The State, 9 Yerg., and Mayor, &c., of Nashville v. Thomas, 5 Col., 600.
But the question now recurs, has our law as to the taxation of these stocks been changed by the act of March 1st, 1869, and if so, had the Legislature the power to make this change?
A good deal of controversy had arisen as to the meaning of the words, “place where the bank is located and not elsewhere,” in the act of Congress of June, 1864; and to meet this, the act of February 10, 1868, was passed, which provides that these words shall be construed to mean the State within which the bank is located. And the act provides in these words: “And the Legislature of each State may determine and direct the manner and place of taxing all the shares of national bank stock located within said. State, subject to the restriction, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and provided always, that the shares of any national bank *407 owned by non-residents of any State shall be taxed in the city or town where said bank is located and not elsewhere.”
After the decision of the Mayor, &c., of Nashville v. Thomas, 5 Col., the act of March 1, 1869, was passed, the 9th section of which provides, that “no tax shall hereafter be assessed upon the capital of any bank or banking association or other joint stock company organized under the authority of this State or of the United States, but stockholders in such bank and banking associations, or other corporations, shall be assessed and taxed on the value of their shares of stock therein, and said shares shall be included in the valuation of the personal property of such stockholders in the assessment of thé State, county, or municipal taxes at the place, town, ward or district, where such bank or banking association or other corporation is located, and not elsewhere, whether said stockholders reside in said place, town, ward or district or not, but not a greater rate than is assessed upon other moneyed capital in the hands of individuals of the State.”
It is very clear that this act makes the change contended for as to the place where the shares shall be taxed, and that it makes them taxable at the place where the bank is located.
Is there any question as to the power of' the Legislature to make this change ? It is clearly within the power given by the act of Congress. The purpose of that act was to leave this question, as to the county or city where the stock of its own citizens in *408 these banks should be taxed, entirely to the State Legislature. As to non-residents, however, the act of Congress provides that their stock shall only be taxed at the city, town, or ward where the bank is located, and not elsewhere.
It will be seen that the 9th section of our act of March 1, 1869, above quoted, is substantially the same as the act of the Legislature of New York, of 23d, April, 1868, as passed upon in the case of The People v. The Commissioners, 4 Wal., 244, and held, to be in compliance with the act of Congress.
Is this act in violation of any provision of the Constitution ? It has not been so contended, and we are aware of no constitutional limit upon the power of the Legislature in this regard.
In the case before referred to The Mayor, etc., of Nashville v. Thomas, 5 Col., Judge Smith says: “ Nothing here said is to be understood as implying that shares of stock owned by residents or non-residents may not be made by legislative enactment taxable at the place of the corporation of which it is an incident. The contrary opinion, if’ ever held or expressed in any decision of this Court, is obsolete.”
See also, the case of The City of Utica v. Churchhill, 33 N. Y., before referred to.
We hold therefore that the Legislature having by positive enactment provided that the stock of its own citizens, in these banks shall be taxed at the city, town, or ward where the bank is located, whether the stockholder reside there or not, and this being within the express power given by the act of Congress, and *409 not in violation of any provision of the Constitution, the taxes may be legally so assessed.
The judgments in the several cases -will be in accordance with this 'opinion.