**R. Moore & Co.** *vs.* **State Insurance Company** and others.

## April Term, 1875.

Assignee in bankruptcy must sue within two years for stock held under defective attachment.—An assignee in bankruptcy who fails to intervene in a pending attachment suit in the state court, in which the bankrupt had previously entered his appearance and made defence, or to institute separate proceedings for the assertion of his rights to the property attached (stock in an insurance company), until the expiration of two years after the assignment, is barred by the limitation of two years prescribed by the bankrupt act, even if the attachment proceedings might have been successfully impeached within the two years.

*Harry Harrison*, for assignee.
*J. A. Cartwright*, for Gennett & Co.

THE CHANCELLOR:—Gennett & Co. the victors in the preceding case, find themselves confronted by a new Richmond in the field, in the shape of the assignee in bankruptcy of A. A. Spencer.

Pending the litigation over the stock in controversy, and on the 6th of February, 1873, Spencer filed his petition in the district court of the United States, at Nashville, to be declared a bankrupt, and on the 11th of February, 1873, he was so adjudged, and on the 28th of February, 1873, James W. Campbell was appointed the assignee of his estate, and an assignment thereof was made to him in due form. On the 25th of May, 1875, in the form of a cross-bill in this cause, Campbell, as assignee, comes into this court claiming that the surplus of the stock, after satisfying the debt of Rainey & Co., belongs to him under the bankrupt assignment. He rests his claim upon the ground that the interest of Spencer in the stock, at the date of the levy of the attachment of Gennett & Co., was equitable, and could not be reached by an attachment at law, and, consequently, that the attachment and sale under it were void, and Gennett & Co. acquired no title by their purchase. The demurrer of Gennett & Co. takes issue on this point, and makes the further issue that the suit of the assignee, not having been brought within two years after the assignment to him, is barred by the 2d section of the act of the 2d of March, 1867, ch. 176, brought into § 5057 of the Revised Statutes of the United States.

The section of the act of 1867 is in these words: "But no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property or rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued for or against such assignee." Section 5057 of the Revised Statutes varies the language slightly, retaining, however, the substance: "No suit, either at law or in equity, shall be maintainable in any court, between an

assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable or vested in such assignee, unless brought within two years from the time when the cause of action accrued. for or against the assignee.''

By the express provision of the bankrupt law, § 14, the assignment to the assignee, when made, relates back to the commencement of the proceedings in bankruptcy, and vests the assignee at once, by operation of law, with the title to all such property and estate, both real and personal, all rights in equity, choses in action, right to prosecute and defend all suits at law or in equity pending at the time of the adjudication, and in which the bankrupt is a party in his own name, as the bankrupt might or could have had or done if no assignment had been made. The cause of action as to property then in existence to which any person claims an adverse interest, or as to any suit then pending in which the bankrupt was a party, manifestly accrues to the assignee at the date of the assignment, and the limitation begins to run from that time. *Pritchard* v. *Chandler*, 2 Curt. 488 ; *Cogdell* v. *Exum*, 69 N. C. 464 ; *Lathrop* v. *Drake*, 30 Leg. Int. 141. And it has recently been held by the Supreme Court of the United States, in a case not yet reported, and which went up from this district, that if the assignee neglect to intervene in a pending suit in the state court for the enforcement of liens on lands of the bankrupt at the date of the assignment, and permit the property to be sold under the judgment of the state court, the purchaser will acquire a good title. And this, it seems, whether the suit be brought within the two years or not. The necessity of active diligence by the assignee is distinctly recognized. This case has since been reported as *Doe* v. *Childress*, 21 Wall. 642. And the decisions are uniform that the limitation of the statute applies as well to suits in the state as in the United States courts, the language, '' in any court whatsoever,'' admitting of no other construction.

The attachment of Gennett & Co. was sued out and

levied on the 9th of May, 1872, on the stock in controversy. On the 14th of October, 1872, an original summons issued in said cause, and was served upon Spencer on the 25th of the same month. On the 13th of January, 1873, Spencer appeared in said cause and filed a plea in abatement of the attachment, and such proceedings were had that, on the 2d of December, 1873, a judgment was rendered in favor of Gennett & Co. against Spencer, and the stock was ordered to be sold in satisfaction thereof, and it was sold accordingly, on the 3d of January, 1874, and bought by Gennett & Co.

If it be conceded, as I am inclined to think it may, that, in analogy to the ordinary statutes of limitation, the bar of the statute would not begin to run until there was an adverse holding (*Banks* v. *Ogden*, 2 Wall. 70) ; and if it be further conceded that, when the assignee has once acquired possession as well as title, the ordinary statutes of limitations would apply ; still, in this case, the " adverse interest " of Gennett & Co. having commenced, by the attachment, long before the petition in bankruptcy, and being in existence at the date of the assignment, and more than two years having elapsed after that date before the filing of the cross-bill by the assignee in this cause, the bar of the statute would seem clearly to have attached.

It is argued, however, on behalf of the assignee, that the attachment of Gennett & Co. was void, and could communicate no title to a purchaser of the stock under it, because the stock having been assigned to Rainey & Co. as collateral security it was not subject to attachment at law at the instance of a creditor of Spencer. It is true that personal property held in pledge is not ordinarily attachable at law for the debts of the pledgor. Drake on Attach. § 520. It is also true that an equitable interest of a debtor in property is not attachable at law. *Lane* v. *Marshall*, 1 Heisk. 30. But the stock in controversy was in the name of Spencer on the books of the insurance company, at the date of the attachment of Gennett & Co., Rainey & Co. having merely an assignment or pledge of

the certificate of stock, which was only evidence of owner-ship of the shares. *Shropshire Union R. R. Co.* v. *The Queen*, L. R. 7 H. L. 509 ; *Mechanics' Bank* v. *New York & N. H. R. R. Co.*, 13 N. Y. 627. And stock in a corporation is in the nature of a chose in action rather than a chattel. *Union Bank* v. *State*, 9 Yerg. 500 ; *McLaughlin* v. *Chadwell*, 7 Heisk. 408. What Rainey & Co. acquired by the assignment of the certificate was an equity to demand a transfer of the stock on the books, which equity was perfected, as against the creditors of Spencer, by notice to the company of the assignment. *State Ins. Co.* v. *Gennett & Co.*, 2 Tenn. Ch. 100. The legal title to the stock was still in Spencer, and his creditors had a clear right to reach it, under our laws, by execution or attachment, subject to the equitable rights of an assignee perfected by notice. *State Ins. Co.* v. *Sax*, 2 Tenn. Ch. 507.

Even if it be conceded that the attachment of Gennett & Co. was invalid, and that the assignee, if he had made himself a party to the suit, could have successfully resisted it, still the statute would seem to bar his claim unless brought forward within the two years from the assignment. For his right, whether legal or equitable, falls within the letter and object of the statute. It has been held that the statute applies where the assignee is seeking to set aside a fraudulent, and, therefore, void, conveyance. *Freelander* v. *Holloman*, 9 Bank. Rep. 331. Obviously the fact that the attachment was void will not prevent the running of the statute in favor of an adverse claim set up under it. And see, now, *Bailey* v. *Glover*, 21 Wall. 346.

It is very ingeniously argued, on behalf of the assignee, that an attachment in this state is not a proceeding *in rem*, but *in personam;* that it does not divest the debtor's title, and only secures a lien or right to the satisfaction of any judgment obtained, and consequently that, until judgment and steps taken to execute it, the assignee would not be compelled to assert his rights. In other words, the argument is that, until judgment, there would be no such adverse

interest on the part of the attaching creditor as would set
the bar of the statute in motion, because up to that time the
claim of the attaching creditor is consistent with the right.
of the assignee, which is the same as the right of the debtor.
The argument is refined, and I am not certain that I fully
grasp it.   The law is that an assignee takes the property and
rights of property of the bankrupt subject to all such
interests and equities of third persons as were attached to it.
in the hands of the bankrupt.   *Ex parte Newhall*, 2 Story,.
360 ; *Ex parte Mebane*, 3 Bank. Rep. 91 ; *Ex parte Bernstein*,.
2 Ben. 44.   If we concede that the " adverse interest " of
Gennett & Co. was a mere lien which recognized the gen--
eral title of the bankrupt, and therefore of the assignee, the
recognition was of the title, subject to the interest of the
lien, and the lapse of time sufficient to bar an action would
protect this interest, even if the assignee's right to the
surplus through his general title remain indisputable.   In.
other words, the bar of the statute protects the " adverse
interest " of a lien, or special claim, just as effectually as it.
would an " adverse interest " to the extent of the whole
property, and this would answer the defendant's purpose in
the present instance.   The protection of the limitation was.
intended for the benefit of " adverse interests " existing at.
the date of the assignment, irrespective of their nature,,
extent, or legal merits.

The cross-bill must be dismissed with costs.