### State Insurance Company *vs.* Julius Sax.

### October Term, 1875.

STOCK OF A CORPORATION—ASSIGNMENT—TITLE OF ASSIGNEE.—In this state: the title of an assignee to stock in a corporation is not complete as against. creditors of the assignor until notice to the corporation.

SAME—CASE IN JUDGMENT.—Thus, where the holder of stock in a corporation pledged the same for borrowed money, by delivering the certificate of shares to the lender, and, at the same time, signing a printed form on the back of the certificate authorizing the assignee to transfer the stock on the books of the company, and afterwards, but before any notice of the assignment or pledge was given to the corporation, a creditor of the assignor levied his execution on the stock by notice to the proper officer of the corporation, it. was held that the creditor had the better right.

THE CHANCELLOR:—On the 15th of June, 1875, Peter Lowry borrowed from Julius Sax $64, for which he gave his obligation to repay the amount in sixty days, reciting on the face of the obligation that he had " deposited or pledged," as collateral security therefor, five shares of the capital stock of the McGavock & Mt. Vernon Railroad Company, and one share of stock of the Tennessee Manufacturing Company. The certificates for these shares were delivered by him to Sax at the time, with the signature of Lowry signed to a printed form on the back of each certificate, authorizing Sax to transfer the stock on the books of the company. No notice of this pledge or transfer was given by Sax to the corporations whose certificates of stock were thus delivered to him, nor, of course, was any transfer of the stock ever made by him on the books of either of said companies. On the 29th of June, 1875, an execution, issued on a judgment in favor of the State Insurance Company against Lowry, was levied upon the same stock of said

companies standing in the name of Lowry, and due notice of the levy was given, by the officer making it, to the secretaries of the two companies, as prescribed by the statute authorizing such a levy. The question raised by these facts is whether Sax, under the pledge as aforesaid, or the officer under his levy, is entitled to priority of satisfaction out of the stock.

The charter of the McGavock & Mt. Vernon Railroad Company contains no provision touching the mode in which its stock shall be transferred. But the charter of the Tennessee Manufacturing Company does, by its 19th section, give the corporation power to fix the number of shares into which the capital stock may be divided, and to prescribe " the mode in which it may be taken, paid, transferred, and assigned." And both certificates provide on their face that the stock is transferable only on the books of the company.

I had occasion recently, in the case of the *State Insurance Company* v. *Gennett and others*, 2 Tenn. Ch. 100, to consider the relative rights of the holder of a certificate of stock in a corporation, assigned as collateral security, and an attaching creditor of the stockholder to whom the certificate had been issued, and I there held that the assignee might, by notice to the company, acquire an equity superior to the right of the subsequently attaching creditor, even if there were a valid by-law of the company providing that the stock should be transferable only on the books of the company. I was further of opinion, although not necessary to the decision of that case, that, even if the authority to regulate the transfer of the stock be expressly conferred by the charter, the result would be the same, the restriction only operating upon the legal title, and enuring to the benefit of the company itself, without affecting the equitable rights of third persons *inter se*, whether acquired under the general law regulating the assignment of property, or by judicial seizure of the stock. A reconsideration of the subject has not tended to change the conclusions then reached.

In this case the assignee failed to give notice of the assignment before the judgment creditor had levied his execution, and the question presented is different. Stock in an incorporated company is declared by a statute of this state to be personal property, and, as such, leviable by execution. Code, § 1487. Perhaps, as has been suggested by one of our eminent judges, it needed no statute to make such stock personal property. *Mayor of Nashville* v. *Thomas*, 5 Coldw. 602. But it certainly needed a statute to make such stock leviable by execution, or attachment, or even liable to be reached in equity. Com. Dig., Execution, C, 4 ; *Dundas* v. *Dutens*, 1 Ves. jr. 196 ; *Grogan* v. *Cooke*, 2 B. & B. 230 ; *Nantes* v. *Corrock*, 9 Ves. 188 ; *Nashville Bank* v. *Ragsdale*, Peck. 296 ; *Erwin* v. *Oldham*, 6 Yerg. 185 ; *Creswell* v. *Smith*, 2 Tenn. Ch. 416. It is in the nature of a chose in action, rather than a chattel. *Union Bank* v. *State*, 9 Yerg. 500 ; *McLaughlin* v. *Chadwell*, 7 Heisk. 408 ; *United States* v. *Cutts*, 1 Sumn. 145 ; *Rex* v. *Capper*, 5 Price, 217 ; *Howe* v. *Starkweather*, 17 Mass. 240. A certificate of stock is not a negotiable instrument, but evidence of the ownership of the shares named. *Shropshire Union Railway Co.* v. *The Queen*, L. R., 7 H. L. 509 ; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 627. Neither its assignment, nor the assignment of the stock itself, except on the books of the company, passes the legal title, but only an equity, which, however, will be recognized and sustained, like such rights under assignments of choses in action, both at law and in equity. *Mount Holly Co.* v. *Ferree*, 1 C. E. Green, 117 ; *Bank of Utica* v. *Smalley*, 2 Cow. 770. Judge McKinney is, therefore, justified in saying, as he does in *Clodfelter* v. *Cox*, 1 Sneed, 339, that the weight of American authority seems to be that the assignment of a chose in action is complete in itself, and vests the ownership in the assignee, as against third persons, without notice of the assignment to the debtor. And see 2 White & Tudor L. C. 1666, and cases cited. "But," he adds, "the contrary of this is the settled doctrine of the English, as well as some

of the courts of this country, at the present day. The latter we consider as the more reasonable and safe practical rule, and have accordingly held, on more than one occasion, that the assignment of a chose in action is not complete, so as to vest the title absolutely in the assignee, until notice of the assignment to the debtor, and this, not only as regards the debtor, but likewise as to third persons. And, therefore, as between successive purchasers or assignees of a chose in action, he is entitled to preference who first gives notice to the debtor, although his assignment be subsequent to that of the other. To perfect the assignment, not merely as against the debtor, but also as against creditors and subsequent *bona fide* purchasers, notice must be given. Hence it follows that an attachment by a creditor, in the period intervening between the assignment and the notice, will have preference.'' This decision, although spoken of doubtingly in the opinion of the learned judge in *Gayoso Savings Institute* v. *Fellows*, 6 Coldw. 467, has been since followed as good law. *Catron* v. *Cross*, 3 Heisk. 584. The doctrine thus enunciated had been previously adopted in the unreported cases of *Marshall* v. *Fields*, and *McGee* v. *Nelson*, mentioned in my brief in *Clodfelter* v. *Cox*, and by the court in *Allen* v. *Bain*, 2 Head, 108. It has met the approval of the Supreme Court of the United States in *Judson* v. *Corcoran*, 17 How. 612, and *Spain* v. *Hamilton*, 1 Wall. 623. And has been adopted in the states of Vermont, New Hampshire, Connecticut, and North Carolina.

The learned judge who delivers the opinion of the court in *Gayoso Savings Institute* v. *Fellows*, 6 Coldw. 471, says that the English rule, which we have followed, is " founded directly upon a construction of their bankrupt laws.'' In this he is in error. The principle is, indeed, traced back to the elaborate discussions of Lord Hardwicke and the judges in *Ryall* v. *Rowles*, 1 Ves. 348, and 1 Atk. 165. That was a case involving, to some extent, the construction of the bankrupt act of 21 Jas. 1, 19 ; but it was precisely

because the reasoning of the Lord Chancellor and the assistant judges turned, so far as the assignments of the choses in action in controversy were concerned, upon general principles, that the case has become the leading one on the subject. It is true, also, that in *Wilmot* v. *Pike*, 5 Hare, 19, Vice-Chancellor Wigram says that it is impossible to read the elaborate judgments of Sir Thomas Plumer in *Dearle* v. *Hall*, and *Loveridge* v. *Cooper*, 3 Russ. 1, 30, without seeing that his opinion, " as to the mode of transferring " equitable interests in property, was borrowed from the decisions in bankruptcy, as to the acts necessary under the statute to take a chose in action out of the disposition of the bankrupt. But the decision of the master of the rolls in these cases was put upon the ground that the law of England has always been that personal property passes by delivery of possession, which determines the apparent ownership, and, by way of preserving the analogy between the transfer of personal chattels in possession and choses in action, that notice is necessary to perfect the title to the latter, " to give a complete right *in rem*, and not merely a right as against him who conveys his interest." Both of these cases were affirmed by Lord Lyndhurst, after " mature deliberation," as he himself tells us, in *Foster* v. *Cockerell*, 3 Cl. & Fin. 476. The principle, he says, acted upon by the master of the rolls was that a party had not done everything to complete his title until he gave notice. " I fully agree," he adds, " with that principle." Lord Brougham also concurs, saying that those cases were not of the first impression, " but cases which have proceeded upon well-defined and well-settled rules of equity." See, also, *Meux* v. *Bell*, 1 Hare, 73 ; *Timson* v. *Ramsbottom*, 2 Keen, 36 ; *Etty* v. *Bridges*, 2 Y. & C. C. C. 486. The reason of the doctrine has also been well explained by Pearson, J., in *Walston* v. *Braswell*, 1 Jones Eq. 137.

The English cases have generally involved assignments of choses in action proper, or funds in the hands of trustees or under the control of the court, or government stocks. It

is obvious, however, that the principle equally applies to stocks in an incorporated company. In *McCarthy* v. *Goold*, 1 B. & B. 387, dividends on bank stock were treated as choses in action, and not attachable or subject to sequestration in equity. In *Martin* v. *Sedgwick*, 9 Beav. 333, the question was as to the priority of encumbrances on shares in a joint stock company. And, in the *Union Bank of Machester*, *ex parte*, L. R. 12 Eq. 354, the rule was applied to stock in a gas company. So, in New Hampshire, Vermont, and Connecticut, three states which have adopted the English doctrine, the principle has been extended to the assignment of the stock of corporations, and to contests between an assignee of such stock and a creditor of the assignor. *Pinkerton* v. *Manchester & Lawrence R. R. Co.*, 42 N. H. 424; *Sabin* v. *Bank of Woodstock*, 21 Vt. 353; *Shipman* v. *Ætna Ins. Co.*, 29 Conn. 245; *Hartford Ins. Co.* v. *Van Buskirk*, 14 Conn. 145. The true *ratio decidendi* seems to be laid down in the Vermont case by Redfield, C. J. : " The mode pointed out in the charter is the only mode which the public are bound to regard as conveying the title to the stock ; and all persons unaffected with notice are at liberty to act upon the faith of the title being as it appears on the books of the corporation ; but this view is not inconsistent with the idea that any other mode of conveyance may, like an unrecorded deed, or an equity to real estate, be good as between the parties and every one having notice."

The practical wisdom of the rule is obvious, because it affords a ready means of tracing the title to stocks, and gives purchasers a security which they otherwise would not have. It is in strict accord, too, with the principle of our registration laws, and of the rights of creditors, as settled by our statute and decisions, against persons who have neglected to register their conveyances. *Washington* v. *Trousdale*, M. & Y. 385 ; Code, §2075.

The law is, of course, otherwise in those states which have not adopted the English rule, as, for example, New York and New Jersey. *Commercial Bank of Buffalo* v.

*Kortnight,* 22 Wend. 348 ; *McNeil* v. *Tenth National Bank,* 46 N. Y. 331 ; *Rogers* v. *New Jersey Ins. Co.,* 4 Halst. Ch. 167 ; *Broadway Bank* v. *McElrath,* 2 Beas. 24. See, also, *State Bank* v. *Cox,* 11 Rich. Eq. 344.

Whatever may be the rulings of other states, it must be considered as the settled law of this state that the title of an assignee to a chose in action, including stock in a corporation, is not complete as against creditors until notice to the debtor or corporation. The necessity of the rule becomes more obvious in view of the statutory provision subjecting stocks to sale by execution, and the ease with which fraudulent claims could be set up by secret transfers of certificates. To avoid the effect of a levy, the assignee should show that he has, with reasonable speed, done everything in his power to perfect his title. If the law were otherwise, the levy of an execution would lead to litigation, not satisfaction. *Naglee* v. *Pacific Wharf Co.,* 20 Cal. 529.

My opinion, consequently, is that the execution creditor has the better right.