ANNE M. RUFFIN v. THE BOARD OF COMMISSIONERS OF ORANGE CO.

Where money is placed in a b mk on deposit, in the usual course of business, it is a *general deposit*, and the depositor has no right to the particular money deposited, as he has in the case of a *special deposit*: Therefore *held* to be error in the Judge below, to charge that money so deposited, remained the *money* of the depositor.

United States Treasury notes, being one of the means used for the support and administration of the general government, cannot be taxed by a State. Nor can Congress for the same reason, tax any of the 'necessary means used to administer the government of any of the States.

The power of a State to tax the circulation of the National Banks, depends upon whether such circulation is for the use of the United States Government or for private profit. Congress can protect the circulation of those banks, by forbidding the States to tax it; until this is done, the States have the right to tax it.

(*Lilly* v. *The Comm'rs of Cumberland*, Ante, p. 300, cited and approved.)

PETITION by the plaintiff to the Board of Commissioners of ORANGE county, praying a revision and correction of the list of taxables given in by her, heard by his Honor, *Tourgee, J.,* at the Spring Term, 1873, of the Superior Court of said county.

His Honor being of opinion with the petitioner, directed

the tax list to be corrected. From this order the Commissioners appealed.

The facts necessary to an understanding of the points decided, are fully set out in the opinion of the Court.

*Attorney General Hargrove*, for appellants, submitted:

1. Assuming that the United States Treasury notes are not taxable by State governments. There is no authority that I have seen deciding that *National Bank notes* are not taxable by State governments. It is true, the *Veazie Bank* v. *Fenno*, 8 Wallace, 549, may bear that construction, but it does not seem to be clear. Dissenting opinion of Judge NELSON, charges that view on the majority of the Court.

2. But if neither United States Treasury notes nor National Bank notes are taxable, still if the owner parts with them, either to an individual or a bank corporation, and takes in lieu of them a note or certificate of indebtedness, then he, the former owner, must pay on his solvent credit.

The individual or bank which may have thus acquired them, if the notes are kept on hand, would be entitled to have them exempt from taxation, but if the notes are changed into other property or evidence of indebtedness, such property would not be entitled to exemption. *Walker* v. *Whitehead*, from Georgia, only decides that a heavy tax on old debts was illegal, &c., it does not decide that a tax on solvent credits is unconstitutional.

Then arises the question. Was this deposit of the plaintiff a solvent credit? And to ascertain the true answer, we must determine whether it was a special deposit or a general deposit? It was a deposit on which the plaintiff could, if she chose so to do, draw interest. Interest was to be paid if she permitted it to remain six months.

The Bank in which it was deposited had no option as to

paying interest; that depended solely upon the action of the plaintiff.

Nothing to the contrary appearing, when a deposit is made it will be taken to be a general deposit; here it was on deposit and the plaintiff had a right to receive interest, and so the bank was the debtor of the plaintiff. The bank was not bound, and it is not to be supposed that the bank would keep the money on hand in its vaults until the expiration of six months to see whether or not the plaintiff would call for it or not, and then at the end of six months pay interest on it.

The condition that "interest was to be paid if the deposit remained six months," meant that interest was to be paid every six months, and if called for, or checked out before the expiration of any six months, counting from the date of deposit, then no interest was to be paid for that fraction of six months which had passed at the time the money must be called for. No bank would take money on special deposit and pay interest on it. *It would be more likely to charge for keeping the* "*notes.*"

As to nature of deposit in bank, see *Planters' Bank of Tennessee* v. *Union Bank of Louisiana,* cited by His Honor Judge BUXTON, in *Lilly* v. *Commissioners of Cumberland County,* now before the Court.

Then this was not a special, but a general deposit—a loan—a solvent credit. The plaintiff calling it "money on hand" or on deposit in her complaint, or it being so listed improperly, on the tax list, cannot alter the true character of the subject matter, for that character is shown by "the case" as sent up by his Honor.

Our State Constitution, art. 5, sec. 3, requires that laws *shall be passed* taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property according to its true value in money."

This seems to be *mandatory*, and compels the Legislature to tax all " moneys, credits," &c., by a uniform rule. United States Treasury notes and National Bank notes are money—a circulating medium—therefore a legal tender for all debts, with one or two exceptions.

There is no express constitutional provision prohibiting State governments from taxing the " instrumentalities " and " means " of the United States government ; that doctrine is established by the decisions of the Courts on account of the relations between the Federal government and the States. If States could tax they could destroy the instrumentalities of Federal government, &c. But Congress may permit the States to tax the " instrumentalities " of the Federal government. It has permitted the States to tax shares in the National Banks. See Act of Congress, 3d June, 1864, 9 Wallace 469. It seems Congress has permitted North Carolina to tax " all moneys, credits, investments in bonds, stocks," &c., (see art. 5, sec. 3, State Constitution,) where Congress approved our new Constitution with that provision in it ; " and it is not to be supposed that it would have been done if it had been thought to be in violation of the Constitution of the United States." See *Jacobs* v. *Smallwood*, 63 N. C. Rep. 116.

" Every presumption is to be made in its favor as having the approbation of the Convention of the State, and of the Congress of the United States." See *Bank* v. *Supervisors*, 7 Wallace 468 ; *Lionberger* v. *Rouse*, 9 Wallace 468.

" State supreme within its sphere, as United States government in its, and Courts reluctant to interfere with power of taxation." See Cooley on Constitutional Lim. ; Sedgewick on Construction of Statutory and Constitutional Law, 1 C.

*John W. Graham*, for petitioner :

The plaintiff contends that the State and county have no

right to tax money on deposit, when the money so deposited consists of United States Treasury notes, and notes of National Banks of the United States on these principles, decided by the Supreme Court of the United States in *Mc-Cullock* v. *The State of Maryland,* 4 Wharton, 316.

1. "The State governments have no right to tax any of the constitutional means employed by the government of the United States to execute its constitutional powers."

2. "The States have no power by taxation or otherwise to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into effect the powers vested in the National Government."

3. The power of establishing a corporation is not a distinct sovereign power or end of government, but only the means of carrying into effect other powers which are sovereign." Mr. Webster in his argument for Mr. Cullock says: "The only question is, whether a bank in its known and ordinary operations is capable of being so connected with the finances and revenues of the government, as to be fairly within the discretion of Congress, when selecting means and instruments to execute its powers and perform its duties." Corporations are but means. The only inquiry therefore, is whether the law imposing this tax be consistent with the free operation of the law establishing the bank, and the full enjoyment of the privileges conferred by it. If it be not, then it is void; if it be, then it may be valid. "If the State may tax the bank, when shall they stop?" It is further argued that the power to tax involves the power to destroy, and the bank must depend on the State government for existence. "The government of the United States has a great pecuniary interest in this corporation." It is true, that in our case, the United States own no stock in the National Banks; but they are organized under the Act of June 3d, 1864, "to provide a national currency," and each note bears the endorsement, "this note is receivable at *par* in all parts of the United

States, and in payment of all taxes and excises, and all *other dues to the United States* except duties on imports ;" and also for all salaries and all other debts, and demands owing by the United States to individuals, corporations and associations within the United States, except the interest on the public debt; and the United States provide severe penalties for counterfeiting these notes. If they are not securities of the United States, how can Congress punish the counterfeiting thereof ? What is the difference between a State's requiring each of these notes to be stamped, as in the *case* of *McCulloch*, and imposing, as in our case, a tax of one *per cent.* on the 1st day of April, 1872, on each note, either on hand or on deposit? Why not 10 *per cent.* as well; and would not this tax prevent the object of Congress, in providing a uniform currency for the whole country ? Congress has destroyed the State banks as banks of issue, by imposing a tax of 10 *per cent.* for the very purpose of making an opening for the national bank currency, and this law has been sustained by the Supreme Court of the United States in the case of *Veazie Bank* v. *Fenno*, in an opinion delivered by Chief Justice CHASE, reported in American Law Review, vol. IV, page 392. It is said in that opinion " it cannot be doubted, that under the Constitution, the power to provide circulation of coin is given to Congress, and is settled by the uniform practice of the government, and by repeating decisions that Congress may constitutionally authorize the emissions of bills of credit."

" Congress has undertaken to supply a currency for the whole country ; the methods adopted to supply this currency were briefly explained in the first part of this opinion. It now consists of coin, of United States notes, and of *notes of the National Banks.* Both descriptions of notes are properly described as bills of credit, for both are furnished by the government, both are issued on the credit of the government, and the government is responsible for the redemp-

tion of both; primarily as to the first description, and ultimately as to the second." "Having thus in the exercise of undisputed constitutional power undertaken to provide a currency for the whole country, it cannot be questioned that Congress may constitutionally secure the benefit of it to the people by appropriate legislation. To this end Congress may discourage by suitable enactments the circulation as money of any notes not issued on its own authority. Without this power indeed, its attempts to secure a sound and uniform currency for the country must be futile." It must, in candor be admitted that the Supreme Court of Indiana, at November Term, 1869, (which we understand to have, before decision of *Veazie Bank* v. *Fenno*,) decided in in *Montgomery County* v. *Elston*, reported in Am. Law Rev., vol. 4, p. 396, that notes issued by the National Banks were not exempt from State taxation, distinguishing them from Treasury notes, which they held were exempt. The position of this Court that "they (the National Bank notes) "are not obligations of the United States in any proper sense of that expression," seems to us in conflict with the opinion of Chief Justice CHASE, before quoted. The notes of the bank in case of McCullock, were not obligations of the United States; still the State of Maryland was not allowed to tax them. The Supreme Court of Indiana say: It follows that the amount of the assessment on the moity, consisting of Treasury notes, was unathorized and illegal; and that the amount rated upon that portion, consisting of the National Banks, was legal and proper." The reasoning of the Court would prohibit the United States from employing any agency, and confine the government to its own notes. This is too narrow a view. *Qui hæret in littera, hæret in cortice.*

The true rule seems to us better expressed in *State* v. *Gaston*, decided by the same Court, and reported in same number of Law Review: "The power of taxation, existing alike

in the general government and in the States, co-extensive and concurrent by virtue of the sovereignty of each, has then for each this limit: neither may tax, because neither may take away the legitimate machinery or agencies employed by the other in the exercise of its govermental powers and functions." It does seem that if the decision is correct, that the National Banks are agencies of the United States, no State can impose a tax which is calculated to prevent the notes passing at *par*, and to interfere with the scheme to provide a currency for the entire country.

Again, Mr. Webster in the argument before quoted, says: " The charter as well as the laws of the United States, makes it the duty of all collectors to receive the notes of the bank, in payment of all debts due the government." The action of the State of Maryland requiring them to be stamped, is characterized as a direct interference with the revenue. " The Legislature of Maryland might, with as much propriety, *tax Treasury notes.* This is either an attempt to expel the bank, or it is an attempt to raise a revenue for State purposes by an imposition on property and franchises holden under the national government, and created by that government for purposes connected with its administration. In either view there cannot be a clearer case of interference." The Attorney General, in his argument in same case, says: " So we contend here that the only ground on which the constitutionality of the bank is maintainable, excludes all interference with the exercise of the power by the States. * * * " If they may tax an institution of finance, they may tax the proceedings in the Court of the United States." Mr. Pinkney, in same case, says: " There is no express provision in the Constitution which exempts any of the national institutions or United States property from taxation. It is only by implication that the army, and navy, and treasury and judicature of the Union are exempt from State taxation. Yet they must be exempt or it would be in the

power of any one State to destroy their use." Again : "A power to impose a tax *ad libitum* upon the notes of the bank is a power to repeal the law by which the bank was created. The bank cannot be useful, it cannot act at all, unless it issues notes. If the present tax does not disable the bank from issuing notes another may ; and it is the authority itself which is questioned as being entirely repugnant to the powers which established and preserves the bank. There must be in this case an implied exception to the general taxing power of the States, because it is a tax on the legislative faculty of Congress, upon the national property, upon the national institutions." It is immaterial if it does thus withdraw certain property from the grasp of State taxation, if Congress had authority to establish the bank, since the power of Congress must be Supreme. In the opinion of the Court in *McCullock* v. *State of Maryland*, Chief Justice MARSHALL says, in speaking of State taxation : "The attempt to use it on the means employed by the government of the Union, in pursuance of the Constitution, is itself an abuse, because it is the usurpation of a power which the people of a single State cannot give." Again : "The right never existed. If the States may tax an instrument employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail, &c., —they may tax all the means employed by the government to an extent which would defeat all the ends of the government. This was not intended by the American people."

1. United States notes issued under the loan and currency Acts of 1862–'63, intended to circulate as money, and actually constituting with the National Bank notes, the ordinary circulating medium of the country, are moreover obligations of the national government, and exempt from State taxation.

2. United States notes are engagements to pay dollars; and the dollars intended are coined dollars of the United

States.   United Stated Supreme Court, 7 Wallace, 26.   The
National Banks were established to provide a national cur-
rency, at a time when the State Banks furnished the entire
paper circulation of the country.

In providing a system by which the States, where National
Banks were located and did business, could tax their
shares, it was important, as their notes came in competition
with State Bank paper, that there should be no unfavorable
discrimination against them.   It was easy to see that an un-
friendly State could legislate so as to drive them out of cir
culation, and this consideration induced Congress to limit
the State power of taxation in two particulars.   *Lionberger*
v. *Rouse,* 9 Wallace, 474.   National Bank Act; *Veazie Bank*
v. *Fenno,* 8 Wallace, 533.   Dissenting opinion of Justice
NELSON; National Banks are required to keep a certain
amount of deposits.

A bank cannot issue bills or notes upon the basis of special
deposits.   *Foster* v. *Essex Bank,* 17 Mass. Rep., 479.   Certifi-
cates of deposit; substantially, they resemble promissory
notes, and the Courts have always inclined to regard them
as such, especially when they are made payable otherwise
than immediately and upon demand.   If they are payable
at a future day, they are simply promissory notes, neither
more or less.   Morse on Banking, 53.

If the money on deposit did not belong to Mrs. Ruffin, it
was an inadvertance to give it in her tax list.   If it was
simply a "solvent credit," the sum may have been placed
on deposit to meet a debt, and the petitioner would not be
required to list it, as the Revenue Law allows the taxpayer
to deduct all debts which he owes, and simply give in the
balance, over and above indebtedness, for taxation.   But
the Revenue Law does not regard a deposit of any kind as
a solvent credit.   They are placed in different columns.
The Revenue Law does not leave the question open; it

makes the deposit the *money* of the taxpayer. The Court cannot do otherwise. *Jones* v. *Justices, &c.,* 2 Murp. 167.

If it was the petitioner's money, it was not liable to taxation as money on deposit, and was inadvertertly rendered. The Court cannot see that she was compelled to give it in as a solvent credit. This case is not an application to remove tax from solvent credits. The taxpayer could not deduct debts from money; he could from credits. See Revenue Law of 1872; National currency Act of 1862, makes deposits subject to United State tax, and not State tax.

Justices of the Peace appointed to receive the list of taxable property, has no right to add to the list any article of taxable property not returned by the owner. *Jones* v. *Justices, &c.,* 2 Murp. 167. Laws of 1872, ch. 115, secs. 5, 6, 7, 8 and 9. County Commissioners cannot add; *Ibid.,* sec. 16.

READE, J. The plaintiff listed for taxation " $15,000 money on deposit," taking from the bank a certificate of the form following:

THE BANK OF MECKLENBURG,
    *Charlotte, N. C.,* ........., 187....
 ..................... has deposited in this office ..............
dollars, to the credit of ..................,........, in United States currency, which will be paid to ...................., or .........
......... order, on the return of this certificate, with interest thereon, at the rate of ...... *per centum per annum,* if left on deposit not less than thirty days."

The plaintiff subsequently applied to the commissioners to correct her tax list, assigning as the reason that the deposit was made in United States Treasury notes, and National Bank bills, and that they were not subject to taxation by the State.

The amount of the tax was $162, and she asked to have

that amount stricken from the tax list; or, if United States Treasury notes are exempt, and National Bank bills are not, then that $81 shall be stricken from the list.

The commissioners refused to alter the list, and the plaintiff appealed to the Superior Court, and that Court directed the commissioners to correct the list by striking out $162. His Honor holding that neither United States Treasury notes, nor National Bank bills were subject to taxation by the State.

Whether that be so or not, seems not to be necessary to the decision of the case; because it is plain that the plaintiff had neither United States Treasury notes nor National Bank bills "on hand" or "on deposit." It is true, she had deposited $15,000 in bank; but it was not a *special* deposit, as a package to be kept for her, and returned in kind when called for; if so, the money, the very money deposited, would have remained hers. But it was a *general* deposit, entered to her "*credit*," not returnable in kind, but "*payable*" to her order, with "*interest*," &c., so it would seem that she had no money at all, and ought not to have listed any. But still, having listed it improperly as money, the question remains, must the defendant strike it out? Suppose it was wrong to list it as money, and right to list it as a "credit," and the tax is the same on each, it would seem to be a vain thing to strike it out of one column and put it into another. What the plaintiff desires, and what she asks for is, to have the item of $162 deducted from the aggregate.

If the aggregate is not to be changed, then it makes no difference with her in what columns the items stand. The plaintiff's counsel answers this view by the suggestion that if treated as a *credit*, she would be entitled to deduct from the amount any debt which she may owe. And that is true. This difficulty might have been avoided if she had alleged in her petition that she was not liable to list it as money,

for the reasons given, nor as a solvent credit, because she was indebted in such a sum. But she makes no such allegation, and therefore we suppose the fact is not so. But still as it seems not to have been considered in this light, either in the Court below, or by the commissioners, or by the plaintiff in her application, she ought to have an opportunity of showing that she does owe debts which ought to be deducted from her " credits."

We think his Honor was in error in holding that the plaintiff's deposit remained her money, either as United States Treasury notes or National Bank bills. And that he ought to have held it to be a " credit," to be listed subject to any debt which the plaintiff owed ; and that he ought to have had an inquiry as to that fact. The judgment below is reversed. And if the plaintiff move, the case will be remanded, that the fact of the indebtedness of the plaintiff may be inquired into.

The point most discussed at this bar was whether United States Treasury notes, and National Bank bills were liable to taxation by the State. And, although, as we have seen, it is not necessary to the decision of the case, yet as his Honor's judgment was based upon it, and as it is a matter of general interest, it may be proper that we should express our opinion upon it. It seems to be settled by numerous cases in the United States Supreme Court, cited in plaintiff's brief beginning with *McCullock* v. *The State of Maryland,* that United States Treasury notes cannot be taxed by the State, because they are of the means used for the support and administration of the United States government. And if a State could tax them, then unfriendly States might *so* tax them as to destroy their usefulness ; and in that way, and to that extent, destroy the United States government. And it is equally well settled, that the United States government cannot tax any of the necessary means used to administer the State government. But whether a State can tax

National Bank bills seems to be a debatable question. The case cited against the power of the State to tax is *Veazie Bank* v. *Fenno*, 8 Wal. 533. We do not think that case supports the position. It is there decided by a divided Court, that Congress may tax the circulation of banks chartered by the State; and *that*, although the tax was so heavy—about sixteen *per cent.*—as to destroy them. It is not pretended that this tax could have been imposed, if the bank had been chartered for the use of the State, and as a means of administering its government. But it is put upon the ground that they are corporations for private profit.

And the power of Congress to tax the circulation of State banks depends upon whether they are for the use of the State government, or for private profit; so the power of the State to tax the circulation of national banks depends upon whether they are for the use of the United States government or for private profit. It is true they are authorized by Congress, as a currency, convenient and useful for circulation; just as State bank bills are authorized by the State. But in neither case have they necessarily any connection with the government. The Act of Congress authorizing National Banks, imposed a tax on their circulation of two per cent. And surely that would not have been done if they had been regarded as a part of the government; as that would have been the same as for the government to tax itself. The truth is that the United States government has no interest in national banks. It authorizes them in order to provide a currency, not for the government, but for the people. And it has the power to regulate and to protect them. To this end it provides for the redemption of their notes, protects them from the imposition of counterfeits and from injurious competion of State banks, by a heavy tax on State bank bills, and no doubt might further protect them by forbidding the State to tax them. But this has not been done, and until it is done, we suppose the State has the

power to tax them.   It seems that all that is to be inferred from the decision in *Veazie Bank* v. *Fenno, supra,* is not that National Bank bills are exempt, but that Congress has the power to exempt them from State taxation.   See *Lilly* v. *Commissioners of Cumberland,* at this term, *ante,* p. 300.

PER CURIAM.         Order of the Court below reversed.