The action is brought to recover payment of the following note:
"$300.00 CHARLOTTE, N.C. April 27th 1875.
"Five days after date, I promise to pay to the Merchants and Farm"ers National Bank of Charlotte, N.C. or order, three hundred dollars, "for value received; negotiable and payable at the Merchants and "Farmers National Bank of Charlotte, N.C. with interest after ma"turity at the rate of eight per cent per annum until paid, for money "loaned.
(Signed) "W. R. MYERS."
The defendant, in his answer, alleged that said note was made and delivered to the plaintiff upon the usurious agreement that the plaintiff should receive interest at the rate of twelve per cent per annum for the said loan, which the plaintiff reserved, paying the defendant the balance.
(515) To this answer the plaintiff demurred. His Honor overruled the demurrer, and rendered the following judgment:
"This case presents the question, whether a National Bank, organized under the act of Congress, June 3d 1864, is subject to the provisions of the statute, entitled `An act to regulate the rate of interest and to prevent usury,' or not.
"The question is not a novel one; it has been discussed with much learning and ability in the Supreme Courts of three of our sister States: In the Supreme Court of Ohio, in the case of the First National Bank ofColumbus v. Garlinghouse, 22 Ohio, 492; and in the Supreme Court of Massachusetts, in the Central National Bank v. Pratt, 115 Mass. it washeld, `That the laws in imposing penalties, (other than those provided by act of Congress,) for taking usury, do not apply to National Banks; while the Court of Appeals in the State of New York, in Lamb v. The FirstNational Bank of Whitehall, held that they do apply to National Banks.' the ground on which the Supreme Courts of Ohio and Massachusetts base their opinion is, `that a National Bank is a convenient, useful and essential instrument in the prosecution of the fiscal operations of the Federal Government; that they were created for national purposes, and endowed with such faculties and functions as were necessary to enable them to effect this object.' That being so created for this object, the State has no power to defeat it by the enactment of usury laws, or in their own words, `That the power of creating such banks being vested in Congress, in inconsistent with a power in *Page 389 
any State or Territory, to affix penalties on the bank for taking unlawful interest.' McCullough v. Maryland, 4 Wheat., 316, is relied on to sustain this position. The Court of Appeals in New York assumes the opposite ground. `That the Federal Government has no concern with the business of the bank. . . . That they are selected as depositories of the public money, or financial agents of the government, but, in so far as their private business and contracts are concerned, the act does not assume to place them on any different footing from (516) natural persons selected by the government, for the performance of some special function.' That National Banks do not bear the same relation to the Federal Government that the United States Bank did, and therefore that the principles decided in McCullough v. Maryland, supra, andOsborne v. United States Bank, 9 Wheat., 738, do not apply to them. So that so far as this question can be settled by the Supreme Court of North Carolina, it will most probably depend on the view it takes of the object and purposes for which National Banks were created; whether they were created to effect national purposes, or whether like other bank corporations, they were established directly for private profit and gain, and indirectly as vehicles for the issue and circulation of a currency, based on the credit of the Federal Government.
"This court being subordinate in its character, it is its duty, if possible, to ascertain the views of the Supreme Court of North Carolina on the question, and then to follow it. This question was directly involved in the opinion of the court in Ruffin v. The Commissioners of Orange,69 N.C. 510. (1873.) It arose in the right of the State to tax National Bank bills. Justice READE in the opinion says: `The power of the State to tax the circulation of National Banks depends upon whether they are for the use of the United States Government, or for privateprofit. It is true they are authorized by Congress, as a currency convenient and useful for circulation, just as State bank bills are authorized by the State. But in neither case have they necessarily any connection with the Government. The act of Congress authorizing National Banks imposed a tax on their circulation of two per cent, and surely that would not have been done if they had been regarded as apart of the Government. The truth is, the United States Governmenthas no interest in National Banks. It authorizes them, in order to provide a currency, not for the Government, but for the people.' This decision is clear and unequivocal, and its conclusion (that (517) the State may tax National Bank bills) is, in my opinion, correct, and fully sustained by authority and reason.
"But it seems that even if the National Banks were created for the use of the United States Government, that our statute does not defeat *Page 390 
this object or obstruct the legitimate operations of the National Banks. `It is only when the State law incapacitates the banks from discharging their duties to the Government, that it becomes unconstitutional.' NationalBank v. Commonwealth, 9 Maine, 362.
"Now it cannot be assumed, that taking more interest than the Stateallows, is a duty that the National Banks owe to the Government; and by this rule the statute of our State cannot be unconstitutional. The State law is not in conflict with the act of Congress; it only imposes a greater penalty, or an additional penalty. Both laws prohibit the taking of usury. The policy of the General Government, as appears by the 30th section of the act of Congress, was to prevent the banks from receiving more interest than the State in which they were located allowed, sustained and enforced by State laws. Penalties are punishments
for wrong, not prices. The Federal Government did not intend to say to the National Banks, if you pay the price of forfeiting interest when demanded, that you may take as much usury from others as you wish. If it had said so, then indeed might the banks complain that this understanding was violated by increasing the price for taking usury, and they might ask the General Government to enforce this understanding: but when the penalty is viewed as a punishment, the rule of law is settled. The State may make the same act punishable by State law that is punished by Federal law. For illustration: By act of Congress, the counterfeiting a United States note or National Bank bill is a crime; so it is a crime by our State law, and the counterfeiter may be punished twice for the same offence. Marigold's case, (518) 9 How., 261; Foy v. Ohio, 5 How., 410; Moore v. Illinois, 14 How., 13. So in this case, the taking of usury may be punished by a State penalty and a United States penalty, according to the court which has the case before it."
For the reasons above stated, his Honor was of opinion that the act of the Legislature is constitutional and applies to National Banks, and that defendant have judgment accordingly.
From this judgment the plaintiff appealed.
The only point in this case has been lately settled by the decision of the U.S. Supreme Court in the case of Bank v. Dearing, 91 U.S. 29, which holds that national banks are subject only to the penalties prescribed by the United States Banking Act for taking usury.
There is error.
PER CURIAM. Judgment reversed, and judgment here for plaintiff. *Page 391 
 Cited: Credit Corp. v. Motors, 243 N.C. 331.