## LIONBERGER *v.* ROUSE.

1. By the second limitation in the proviso to the 41st section of the National banking act, which enacts that the tax which the section allows the States to impose on the shares held by persons in the said banks, "shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State where such association is located," Congress meant no more than to require of each State, as a condition to the exercise of the power to tax the shares in National banks, that it should, as far as it had the capacity, tax in like manner the shares of banks of issue of its own creation.

2. Accordingly, where a State, having at the time only two banks of issue and circulation, both of which two it had by contract with them disabled itself from taxing beyond a certain amount, had also numerous banks not banks of issue, having a far greater capital than the two of issue, laid a tax on all shares of stock in banks and incorporated companies generally,—the fact that it could not collect a tax past a certain amount in the two banks of issue which it had at that time, was held no bar to the collection of the tax on the shares of the National banks for a greater amount.

ERROR to the Supreme Court of Missouri, the case being this:

Prior to 1857, there had been in Missouri, and there were in the State at that time, several institutions which—under the name, for the most part, of savings banks, loan institutions, saving associations, and the like, though sometimes with the title of *banks* only—transacted business often known as "banking;" that is to say, which received deposits, lent money, and dealt in exchange; but which had not the privilege of issuing notes to circulate as money; not, therefore, banks *of issue.*

In the year just named, 1857, the State established ten banks, which, in addition to the powers of receiving deposits, lending money, and dealing in exchange, had also the power of *issuing paper money;* the ordinary banks of deposit, discount, and *issue* or *circulation.* There were thus in the State, "banks" which were not banks of issue, and banks which were banks of this kind. The act establishing the ten banks of issue declared that

" *Each banking company* (incorporated under it) agrees to pay to the State annually *one per cent.* on the amount of capital stock paid in by the stockholders other than the State, which shall be *in full of all bonus and taxes* to be paid to the State by the respective *banks.*"

And an act amendatory of the act of incorporation provided that this one per cent. on the amount of capital stock should be a full compensation for all taxes of every kind whatsoever.

In 1863, these ten banks of discount, deposit, and issue, as also numerous other banks not banks of issue, but banks of the sort first above described, being in existence, Congress, by act of 25th of February, of that year, entitled " An act to provide for a National currency," authorized the establishment of National banks; giving power in the act to State banks to become National ones. Under this act of Congress (the State legislature also authorizing any bank, savings institution, savings association, or other corporation having banking powers and privileges in the State, under the laws thereof, to form associations for the purpose of doing a banking business under the act of Congress of February 25th, 1863), eight of the already mentioned ten banks of issue, and which had the privilege while State banks to pay the one per cent. annually in lieu of all taxes, made themselves National banks. Two, however, did not. These two remained State institutions with the privilege of the one per cent., as before. The old associations, that is to say, the banks not of issue, all of which had charters independently of the act of 1857, and which had not the privilege to pay one per cent. in lieu of all other taxes, remained State institutions.

In this state of things, Congress, on the 3d of June, 1864, passed an act regulating the right of States to tax the shares of National banks. The 41st section of this act[*] provided:

" That nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person,

---

[*] 13 Stat. at Large, 111.

from being included in the valuation of personal property of such person in the assessment of taxes imposed by or under State authority, at the place where such a bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State.

"*Provided further*, that the tax so imposed, under the laws of any State, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State where such association is located."

These enactments, Federal and State, being in force, the legislature of Missouri, by an act of the 4th February, 1864, concerning revenue, provided that " shares of stock in *banks* and other incorporated companies" should be subject to assessment as other property. The statute provided the mode of assessment as follows :

" Persons owning shares in banks and other incorporated companies, taxable by law, are not required to deliver to the assessor a list thereof; but the President or other chief officer of such corporation shall deliver to the assessor a list of all shares of stock held therein, and the names of the persons who hold the same.

" The tax assessed on shares of stock, embraced in said list, *shall be paid by the corporations respectively,* and they may recover from the owners of such shares the amount so paid by them, or deduct the same from dividends accruing on such shares."

Under this act, a tax of nearly two per cent. was levied by the State on the assessed valuation of the shares of one Lionberger, a resident of St. Louis, and a shareholder in the Third National Bank of St. Louis. Payment of the tax being refused, the collector, a certain Rouse, collected it forcibly. Lionberger thereupon brought suit against him, in one of the State courts, for the alleged wrongful act; asserting that the proviso in the 41st section of the act of 1864, imposing a limitation on the power of the States, had

reference to banks of issue alone; that the State had dis-
abled itself by its contract with them to tax that sort of
bank otherwise than it had contracted for (one per cent.), and
that the assessment and collection, if made under color of
law, were without any legal authority whatever.  It was not
denied that the two State banks of issue held a very incon-
siderable portion of the banking capital of the State, and
that the shares of all other associations in the State (of which
there were many, some created after 1857, and some before),
with all the privileges of banking except the power to emit
bills, were taxed like the shares in National banks.  The
court in which the suit was brought decided adversely to
the position set up, and on appeal the Supreme Court of the
State—observing that the moneyed associations, saving and
banking institutions of the State, were banks to all intents
and purposes, and that their shareholders were taxed at the
same prescribed rate as the shareholders in the National in-
stitutions—affirmed the decision.  The case was now brought
here for review.  Many shareholders in the National banks
in Missouri had also refused to pay the tax laid under the
State statute, and the present case was in the nature of a
test case to settle its validity; more than $300,000 of such
taxes, as was said, being dependent on the judgment.

*Messrs. Evarts and Broadhead, for the plaintiff in error:*

1. We assume, as matter of law, that the State of Mis-
souri has disabled itself by contract with the two now exist-
ing State banks of issue from laying any tax upon *them*, or
upon their shares, but that of one per cent.*  And we assume
also, that no taxation by the State upon the capital of the
National banks can be at present made, under any Federal
legislation existing, nor any upon the shares except under
the permissive and restrictive authority of the 41st section
of the act of Congress of June 3d, 1864.†  How, then, can

---

* Home of the Friendless v Rouse, 8 Wallace, 430.

† Gordon v. The Appeal Court, 3 Howard, 133; Van Allen v. The Asses-
sors, 3 Wallace, 573; People v. The Commissioners, 4 Id. 244; Bradley v.
The People Ib. 459.

the tax in question, even admitting it to be a tax on shares, as distinguished from one on capital, be justified? The fact that certain State institutions—sometimes called banks, and without impropriety—are subjected to the same rate and method of taxation as are applied to the National banks is no answer to our question; for the 41st section provides, as the final condition to the validity of State taxation of the shares of National banks, that the tax so imposed " shall not exceed the rate imposed upon the shares in *any* of the banks organized under the authority of the State," where the National bank is located. But,

2. The tax is really a tax on the capital of the banks. The *shares* are not taxed at all. The shareholder has nothing, under the Missouri statute, to do with the matter. *He* makes no return of his shares. It is " the president or other chief officer of such corporation " who delivers to the assessor the list of *all* the shares in the bank; and it is the corporation which, by the express words of the State statute, pays the tax. That the corporation gets it afterwards, as it can and if it can, does not change the case.

*Messrs. Blair and Dick, contra :*

1. The Supreme Court of Missouri has decided that the two institutions organized under the act of 1857, are not the only " banks " in the State, but on the contrary, that the banking institutions organized under the laws of the State which confer banking privileges without the power of issuing paper, are banks ; and this is in harmony with the ruling of this court in the case of *The Bank for Savings* v. *The Collector,** which says :

" Banks, in the commercial sense, are of three kinds, to wit: 1st, of deposit; 2d, of discount; 3d, of circulation; all or any of these functions may be and frequently are exercised by the same association ; but there are still banks of deposit, without authority to make discounts, or issue a circulating medium."

---

* 3 Wallace, 495, 512.

The revenue laws of Congress also recognize banks without circulation as "banks" for the purposes of taxation.

The meaning given by the plaintiff to the State statute, assumes that the word "banks" means, always, "banks of issue," which it does not always mean.

2. The bank is made by the State statute the agent of each individual shareholder, and acts merely as such. This is a convenience to him as also to the State; and is not unlawful.

Mr. Justice DAVIS delivered the opinion of the court.

This case has received the careful consideration of the court, as well on account of the principle involved, as of the large amount of money dependent on the decision of the suit.

It is no longer an open question in this court, since the decision in the case of *Van Allen* v. *The Assessors*,\* that the shareholders in a National bank are subject to State taxation, although the entire capital of the bank be invested in the bonds of the United States, which cannot be taxed by State authority. The difficulties which have arisen since that decision do not relate to the abstract right of taxation, but grow out of the supposed conflict of State legislation with the provisions of the act of Congress on the subject. The forty-first section of the act of Congress of 3d of June, 1864,† placing these shares within the reach of the taxing power of the States, annexed two conditions to the exercise of the power. The State was forbidden to tax them higher than it taxed other moneyed capital in the hands of its own citizens, or to impose on them a tax exceeding the rate imposed upon the shares in any of the banks organized under State authority. If there was no discrimination in these particulars the State could lawfully tax shares in the National banks. It is conceded the tax exacted from the plaintiff in error was not greater than was assessed on other moneyed capital belonging to individuals or corporations, but it is claimed that it is higher than the rate paid by the State banks.

---

\* 3 Wallace, 573.        † 13 Stat. at Large, 111.

And this brings us to the consideration of the main ques
tion in the case. It is contended that the tax in question is
invalid, because the two State banks chartered in 1857, which
did not, like the remaining eight, become National banks,
cannot be taxed more highly than one per cent., while the
assessment of the shares of the plaintiff in error equals
nearly two per cent. It is not denied that these two banks
hold a very inconsiderable portion of the banking capital of
the State, and that the shares of all other associations in the
State (there being many), with all the privileges of banking
except the power to emit bills, are taxed like the shares in
National banks, but it is claimed the proviso in the forty-first
section of the National banking act, imposing a limitation
on the power of the States, has reference alone to banks of
issue. To ascertain the sense in which the word bank is
used in the proviso to this section, it is necessary to recur to
the mischief which Congress desired to guard against. The
National banks were established to provide a National cur-
rency, at a time when the State banks furnished the entire
paper circulation of the country. In providing a system by
which the States, where National banks were located and
did business, could tax their shares, it was important, as their
notes came in competition with State bank paper, that there
should be no unfavorable discrimination against them. It
was easy to see that an unfriendly State could legislate so as
to drive them out of circulation, and this consideration in-
duced Congress to limit the State power of taxation in two
particulars. In declaring that National bank shares should
be taxed like other moneyed capital, and that no burdens
should be imposed on them from which State banks were
exempt, all was done that the necessity of the case required.
There was nothing to fear from banks of discount and de-
posit merely, for in no event could they work any displace-
ment of National bank circulation. It seems, therefore,
clear, that the proviso to the forty-first section was meant by
Congress to apply to banks of issue. It is proper in this
connection to observe, that the changed condition of the
banking interests of the country, has been the occasion of

further legislation by Congress on this subject, and that *now* the power of State taxation over the shares of National banks is subject only to the restriction that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens.*

Having determined that Congress, in imposing conditions on the power of the State to tax, had reference to banks of circulation, the question arises whether the tax in this case was invalid because of the status of the two banks left in Missouri. According to the words of the law the tax was not warranted, but did Congress intend that the law should have such an effect? Did it contemplate that the shares of National banks should escape taxation, if the State complied, so far as it had the ability to do so, with the requirements of the forty-first section of the National Banking Act? In our opinion the answers to these inquiries must be in the negative. It is a universal rule in the exposition of statutes that the intent of the law, if it can be clearly ascertained, shall prevail over the letter, and this is especially true where the precise words, if construed in their ordinary sense, would lead to manifest injustice.†

It is very clear that Congress, in conceding to the States the right to tax, adopted a measure which it was supposed would operate to restrain them from legislating adversely to the interests of the National banks. The measure itself had reference to prospective legislation by the States, and its object was accomplished when the States conformed, as far as practicable, their revenue systems to it. Exact conformity was required, if attainable, but the law-making power did not intend such an absurd thing, as that the power of the State to tax should depend on its doing an act, which it had obliged itself not to do. It was well known at the time, and Congress must be supposed to have legislated on this subject with reference to it, that States, by contract with individuals or corporations, could grant away the right of taxa-

* 15 Stat. at Large, p. 34.

† Dwarris on Statutes, chap. 12; Perry *v.* Skinner, 2 Meeson & Welsby. 477; Stocker *v* Warner, 1 Commons' Bench, 149.

tion, and that this power had been frequently exercised. It was equally within the knowledge of Congress that the policy on this subject varied in different States; while some of them retained in their own hands the power of taxation over all species of property, except such as were devoted to religious or charitable purposes, others had parted with it to interests of a purely business character, like banks and railroads. Can it be supposed that Congress, in this condition of things in the country, meant to confer a privilege by one section of a law which by another it made practically unavailable? If the construction contended for by the plaintiff in error be allowed, then a State so unfortunate as to have a single bank, whose shareholders are exempt by contract from taxation in the manner provided by Congress, can derive no benefit from the power given to tax the shares of National banks. And this further consequence would follow, that the shareholders of National banks located in one State would escape all taxation, while those whose property was invested in banks in a different locality, would have to contribute their full share of the public burdens. This court will not impute to Congress a purpose that would lead to such manifest injustice, in the absence of an express declaration to that effect. Without pursuing the subject further, it is enough to say, in our opinion, Congress meant no more by the second limitation in the proviso to the forty-first section of the National Banking Act, than to require of each State, as a condition to the exercise of the power to tax the shares in National banks, that it should, as far as it had the capacity, tax in like manner the shares of banks of issue of its own creation.

Testing the case in hand by this rule it is apparent that the tax complained of was properly assessed and collected. Missouri has complied, so far as it had the ability to do it, with the demands of the law.

The legislature, as soon as the National banking system was created, passed a law enabling the ten banks of issue in the State to wind up their business, in order that their shareholders could, if they chose, transfer their interests to the

new system. Eight of these banks availed themselves of the privilege, surrendered their charters as State corporations, and became National bank associations. Two of them declined the proposition tendered by the State, and are still doing business in St. Louis. There is no way the State could compel them to relinquish their charters, nor has it the power to tax their stockholders on their shares of stock. Having contracted with these banks to accept from them annually, in lieu of all taxes, one per cent. on their paid-in capital stock, it cannot turn round and assess a tax on the shareholders. As the State did all that it could to conform its legislation to the requirements of the law, it was therefore in a condition to impose the tax in question on the shares of stock held by the plaintiff in error.

It is objected that the mode of assessment provided by the general revenue law of the State, is inconsistent with the provisions of the act of Congress of June 3d, 1864, as it requires the tax assessed on the shares of stock, to be paid by the corporations respectively instead of the individual shareholders. This was one of the questions in the case of the *National Bank* v. *Commonwealth*, decided at this term,* and it was there held that this mode of assessment was not inconsistent with the terms of the law, but in all respects unobjectionable. It is unnecessary to repeat the argument presented in that case, or to consider the point further, as we see no reason to question the soundness of that decision.

JUDGMENT AFFIRMED.