ST. LOUIS, K. C. & N. R. CO. (EAKIN v.). See Case No. 4,236.

ST. LOUIS LIFE INS. CO. (MACUMBER v.). See Case No. 8,929.

ST. LOUIS LIFE INS. CO. (NETTLETON v.). See Case No. 10,128.

ST. LOUIS MUT. LIFE INS. CO. (ANDERSON v.). See Case No. 362.

ST. LOUIS. MUT. LIFE INS. CO. (JARMAN v.). See Case No. 7,221.

ST. LOUIS MUT. LIFE INS. CO. (ROBINSON v.). See Case No. 11,964.

## Case No. 12,239.

ST. LOUIS NAT. BANK v. PAPIN. NATIONAL BANK OF MISSOURI v. SAME. THIRD NAT. BANK v. SAME. FOURTH NAT. BANK v. SAME. VALLEY NAT. BANK v. SAME. MERCHANTS' NAT. BANK v. SAME.

[4 Dill. 29;[1] 22 Int. Rev. Rec. 343; 3 Cent. Law J. 669; 1 Thomp. Nat. Bank Cas. 326.]

Circuit Court, E. D. Missouri. Sept. Term, 1876.

TAXATION OF SHARES — NATIONAL BANKS — REV. ST. § 5219.

1. Shares in banks being taxable and no excessive valuation being complained of, equity will not restrain the collection of the taxes, though the assessing officers may have arrived at a correct result by some erroneous method.

2. Where an act of the legislature is susceptible of two interpretations, one of which will overthrow the act or make it unconstitutional, and the other will support the act and give it effect, the latter is to be adopted by the judicial branch of the government. This principle is one which commends itself to the federal courts with great force, in all cases where they are called upon to expound and apply state legislation, and especially so where they are asked to overthrow the revenue laws of the states.

3. By the section of the national banking act (Rev. St. § 5219 [13 Stat. 99]) which permits the states to authorize all the shares held in national banks by any person, to be included in the valuation of his personal property, and to be assessed at the place where the national bank is located, subject to the restriction "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individuals," congress has limited the states to taxation upon the shares in national banks as distinguished from taxation of the banks eo nomine upon their property or capital. A state cannot evade the restrictions of

1 [Reported by Hon. John. F Dillon, Circuit Judge, and here reprinted by permission.]

the act by requiring the value of the property of the bank to be added to value of the shares otherwise ascertained, and thus produce an unfavorable discrimination in the taxation of bank shares.

4. As regards national banks, section 35 of the revenue act of 1872 of Missouri [Wag. St. c. 118] may be construed as intended to impose a tax upon the shares only in such banks at their actual cash value, to be estimated by the taxing officers upon an inquiry inter alia into the actual value of the property of the banks, so far as it imparts a value to the shares.

The national banking act permits the states to authorize all the shares held in national banks by any person to be included in the valuation of his personal property, and to be assessed at the place where the national bank is located, subject to the restriction (the only one here involved) that such shares shall not be taxed "at a greater rate than is assessed upon other moneyed capital in the hands of individuals." Rev. St. § 5219. The constitution of Missouri requires all property to be taxed in proportion to its value. In the revenue act of the state of Missouri, approved March 30, 1872 (Wag. St. c. 118), are the following provisions in respect to the taxation of property and shares in corporations. Section 35 of this act provides as follows: "Persons owning shares of stock in banks or any joint stock institution or association doing a banking business, or any insurance company, whether fire, marine, life, health, accident, or other insurance, incorporated under or by any law of the United States or of this state, are not required to deliver to the assessor a list thereof; but the president or other chief officers of such corporation shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the names of the persons who hold the same, and shall also state the actual cash value of such stock and all the property belonging to such corporation. In estimating the value of such stock and property, the officer making the same shall estimate and include all reserve funds, undivided profits, premiums, or earnings, and all other values belonging to such corporation, which cash value shall be assessed and taxed as other personal property. Insurance companies, or any corporation doing business on the mutual plan, without capital stock, shall make like returns of the net value of all assets or values belonging thereto, which net value shall be assessed and taxed in like manner; private bankers, brokers, money brokers, and exchange dealers shall in like manner make returns of all moneys or values of any description invested in, or used in, their business, which shall be taxed as other personal property." Section 36: "The taxes assessed on shares of stock embraced in such list shall be paid by the corporations respectively, and they may recover from the owners of such shares the amount so paid by them, or deduct the same from the dividends accruing on such shares, and the amount so paid shall be a lien on such shares respectively, and shall be paid before a transfer thereof can be made." Sections 37, 118, and 120 of the act refer to the mode of proceeding to collect the taxes, and penalties for non-compliance with its provisions. Six of the national banks located in St. Louis brought in this court bills in equity for an injunction to restrain the collection of taxes amounting to $158,772.53, levied for the year 1875, under the authority of the revenue laws of the state, upon the shares of the respective shareholders of the said banks. Answers were filed and proofs taken, and the cases were argued and submitted together.

James O. Broadhead, Henry Hitchcock, Noble & Orrick, and M. B. Jonas, for plaintiffs.

F. J. Bowman, Samuel Reber, and G. A. Madill, for defendants.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. The bills do not allege that the state has taxed or attempted to assess any tax against any of the banks eo nomine in respect of property (other than real estate) owned by them in their corporate capacity. The only tax assessed by the state or under its authority, except a tax on the real estate, of which no complaint is made, is a tax upon the shares of the shareholders. It is not alleged in the bills, as a ground for injunction or relief, that the shares have in fact been valued for taxation at more than their actual cash value.

But the special ground of complaint is that the taxes in question are not authorized, and if authorized, are authorized by section 35 of the revenue act of 1872, above quoted, and that that section prescribes a mode of ascertaining and fixing the valuation of the shares (which mode the taxing officers of the state are bound to follow) in conflict with the permission given in the national banking act to the states to tax the shares, and which, if carried out, as it must be if any taxes whatever are levied under it, results necessarily, as contended, in taxing these shares more than the other moneyed capital in the state is taxed, thus at once contravening the restriction in this respect contained in the act of congress, and the provision as to equality of taxation contained in the constitution of the state.

It is contended by the counsel for the banks that by section 35 of the revenue act of 1872, above given, the legislature has provided for taxing the shareholders not only upon the value of their shares as such, but, in addition to this, for taxing them through their shares upon all the property of the bank, by commanding the taxing officers to "include" the value of all such property in the valuation of the shares.

It is probably a sound view of the federal legislation, as it stands (Rev. St. § 5219), that congress has limited the states to taxation upon the shares in national banks, as distinguished from taxation of the banks eo nom-

ine upon their property or capital, and if so, the states could not evade the restrictions of the act of congress by requiring the value of the property of the bank to be added to the value of the shares otherwise ascertained, and thus produce an unfavorable discrimination in the taxation of bank shares. The question is, whether the legislature of Missouri has done what the counsel for the banks assert.

It must be admitted that the language of section 35 is not free from obscurity, and that has been quite manifest upon the argument before us, since it showed that the counsel for the defendant have put different constructions upon it. In reaching a conclusion, the court must bear in mind certain established principles of construction. One is, that where an act of the legislature is susceptible of two interpretations, one of which will overthrow the act or make it unconstitutional, and the other will support the act and give it effect, the latter is to be adopted by the judicial branch of the government. This principle is one that commends itself to the federal courts with great force, in all cases where they are called upon to expound and apply state legislation, and with more than ordinary persuasiveness in cases in which these courts are asked to overthrow the revenue law of the states.

The court is of opinion that section 35, in respect of the valuation of the shares in national banks, does not necessarily require the construction which the banks put upon it; that is to say, it does not require the value of the property of the bank as a corporate entity to be added to the value of the shares, and the whole to be divided by the number of shares, the quotient giving the value of each share. But its requirement is to ascertain and tax the share at its actual cash value; but in ascertaining that value, the officer is directed to regard and include in his estimate all reserve funds, profits, earnings, and other values. Why not? These are important elements in the question of value, and they should be included in estimating the value of the stock. From these, indeed, the stock derives its principal pecuniary value. Suppose the direction to the taxing officers was to assess the shares at their cash value, without prescribing how that value should be ascertained. The cash value may be more or less than the par value, or more or less than the market value. The actual value of shares depends chiefly upon the capital, property, and values owned by the bank. Any intelligent determination of the value of a share involves an inquiry into the assets and property of the bank.

The act did not intend to make the estimate of value fixed by the president of the bank conclusive. The duty of estimating the value is devolved on the officers of the state; and as respects national banks, the provision requiring the president of the bank to return the property of the bank and state its value,

can and should be regarded as intended to supply the assessing officer with data to form a just and fair judgment as to the actual value of the shares. To this end, and to preclude controversy, the act directs "reserve funds, undivided profits, premiums or earnings, or other values belonging to the corporations," to be included in estimating the value of the shares. It does not seem to us that the act excludes from the consideration of the assessor the liabilities of the bank, since these must be taken into account, if the "actual cash value" of the stock and no more is to be ascertained and taxed. This view is confirmed by the next sentence, which requires corporations on the mutual plan to "make like returns of the net value"—which would allow liabilities to be regarded in ascertaining the value of the assets to be taxed.

We do not think a fair construction of section 35 requires the assessing officers to exclude from their consideration the liabilities and actual instead of nominal value of the assets of the bank, in ascertaining the taxable value of the property of the bank, as one means of arriving at the value of the shares.

As respects national banks, our judgment is that the act of the legislature can be fairly construed as intended to impose a tax upon the shares only in national banks at their actual cash value; that such cash value is to be estimated by the taxing officers upon an inquiry, inter alia, into the actual value of the property of the banks, so far as this imparts or confers a value upon the shares, and that this is the purpose which should be judicially ascribed to the legislature, rather than a purpose to impose taxes upon an illegal valuation. The proofs do not show that the valuation of the shares by the taxing officers is excessive; at all events, an excessive valuation in fact is not made a ground of relief in the bills. Inasmuch as the shares are taxable and no excessive valuation is complained of, equity would not restrain the collection of the taxes, even though the assessing officers may have arrived at a correct result by some erroneous method.

A decree will be entered in each case dismissing the bill of complaint. Decree accordingly.

This decision was acquiesced in by the banks, and the taxes assessed against them were paid.