# Sumter County *v.* The National Bank of Gainesville.

*Action for Taxes.*

1. *National Banks; how far subject to State taxation.*—National banks are not subject to State taxation, except in so far as Congress authorizes it.
2. *Same.*—Under the acts of Congress, national banks having their stock invested in United States bonds, are not subject to taxation on their capital stock, under State authority.
3. *Assessment; what invalid.*—An assessment upon the capital stock of a national bank, by an aggregate or gross assessment, is irregular and invalid.
4. *Taxation by State; what subject to.*—Shares in such banks are subject to State taxation against the individual shareholders.
5. *National bank; when required to pay tax assessed against shareholder.*— When the State statute authorizes it, the banks may be compelled, by suit, to pay the taxes so assessed upon the shares.
6. *Taxes on shares; how collected.*—In the absence of such legislation, such tax upon the shares is collectible of the shareholders, in the same manner as other taxes are collectible of individuals.
7. *Act of February 23, 1875; how far inoperative.*—The act to restrict the power of taxation, &c., approved February 23, 1875, so far as may be sup- posed to relate to the capital stock of national banks, is inoperative.
8. *Subdivision 7, section 369, of Code of 1876; constitutionality of.*—So much of section 369, subdivision 7, of the Code of 1876, as provides for the collec- tion of a State tax of seventy-five cents on each share of the capital stock of

[Sumter County v. The National Bank of Gainesville.]

national banking associations, &c., and providing that such taxation shall be in lieu of all other State, county, and municipal taxation on such shares, is in conflict with the constitution, and void.

9. *Same; what part of inoperative.*—That part of said subdivision which exacts that said tax "shall be paid by each such associations for the shareholders thereof," being dependent upon the other unconstitutional portions, and incapable of independent operation, is inoperative, and imposes no duty on the national banks to pay such taxes.

10. *Shares of national banks; under what section of Code now assessed.*—Under the statutes of this State now in force, shares of the capital stock of such banks can be assessed only under subdivision 13 of section 362 of the Code.

11. *Assessment; what illegal.*—An assessment upon the capital stock in the aggregate instead of against the shares, being irregular and invalid, and there being no valid act of the legislature requiring the bank to pay the tax against the shares when properly assessed, a county has no right of action against the bank for the refusal to pay the amount assessed against the capital stock.

APPEAL from Sumter Circuit Court.
Tried before Hon. LUTHER R. SMITH.
The opinion states the facts.

S. H. SPROTT and THOMAS B. WETMORE, for appellant.—The act of Congress of 1863, called the "national currency act," was silent as to taxation by the State.—U. S. Stat. at Large, 1863, p. 665. But the act of Congress of 1864 put it beyond question that these banking associations were liable to taxation by the State, subject to the two restrictions therein named.—U. S. Stat. at Large, p. 112. And the act of February 10, 1868, now forming section 5219 of the United States Revised Statutes, removes all restriction on the power of State taxation over the shares of national banks, except that the rate of taxation shall not be greater than is assessed upon other money capital in the hands of individual citizens, and that they shall be taxed at the place where the bank is located.—*Lionberger v. Rouse*, 9 Wall. 477.

It is proper to require the bank to pay the taxes, and it is the usual course in the New England States, and is the plan adopted by the United States government itself.—*National Bank v. Commonwealth*, 9 Wall. 358. The taxation upon the bank is but a tax upon the new uses and privileges conferred by the charter of the association.—*Van Allen v. Assessors*, 3 Wall. 582-3. The revenue act of Alabama of 1875, pages 6 and 7, fixes the rate of taxation, at the same time prescribing the mode and manner of collecting the same.—Code of 1876, § 369, subdivision 7. A part of subdivision 7, § 369, seeks to exempt banks from county tax. That part of the subdivision is unconstitutional, but an act may be partly constitutional and partly unconstitutional.—1 Brick. Dig. p. 361; *Lehman, Durr & Co. v. Robinson*, 60 Ala. 10. As to the unconstitutionality of that part of the act which attempts to exempt from county tax, see 53 Ala. 580. The

mere fact that Sumter county did not collect the taxes due it, each year acquiescing for the time in an unconstitutional statute, does not preclude it from now taking steps to collect it.—*Perry County v. Selma, Marion & Memphis R. R. Co.,* 58 Ala. 546; Cooley on Taxation, 300, 152, 154. And such taxes could be collected by an action at law.—*Perry County v. Selma, Marion & Memphis R. R. Co., supra.*

SNEDECOR & COCKRELL, and W. G. LITTLE, Jr., *contra.*—To enable a State to reach the interest of the shareholder for the purpose of taxation, it must proceed in conformity with the provisions of the national currency act, under and by virtue of which this species of property is alone taxable by the State.—Rev. Stat. U. S. § 5219, p. 1015. But the legislature of each State may determine and direct the manner and place of taxing all the shares. The act of Congress conferred power on the legislature to tax, not on the constitutional convention, and the power thus conferred was not subject to any restrictions save those contained in the act. The constitutional convention of the State had no power to impose any additional restrictions. The power of the legislature to tax was derived from the United States, and the State constitution could impose no restrictions upon it.—See 33 N. Y. 243. The only law of the State of Alabama providing for taxation of shares in national banks, does not contain the restrictions contained in the federal act, and hence there is no law in the State of Alabama which authorizes the State to tax the shares.

If the subdivision of section 369 of the Code is constitutional, it is clear there is no tax due from the bank or its shareholders to the county. The legislature, by the terms of the national currency act and its amendments, is permitted to tax the shares of national banks, but it is not required to do so. The constitutional provision which it is supposed the subdivision of section 369, above referred to, violates, was intended to apply, and does apply, exclusively to the inhibition of the legislature from discriminating in the exercise of its taxing power in favor of corporations created by it, under the constitutional clauses granting it power to create corporations, and not to that class of corporations which existed independently of the legislature.

The conclusion, then, is irresistible that the Gainesville National Bank, as a corporation, cannot be taxed as a corporation; can not be taxed for the shares of its stockholders, in the absence of legislation authorizing it, and the only legislation authorizing it is subdivision 7 of section 369 of the Code of 1876. If that legislation is constitutional, the na-

tional bank is not liable to a county tax; if it is not consti-
tutional, there is no act of the legislature which authorizes a
national bank to be assessed for taxes due from its share-
holders.

STONE, J.—The present complaint contains many counts,
but in each one the taxes claimed are averred to have been
assessed upon the capital stock of the defendant corpora-
tion, by an aggregate or gross assessment. In the case of
*The National Commercial Bank of Mobile v. Mayor, &c., of
Mobile,* we ruled that such assessment is irregular and in-
valid, and that the capital stock of a national bank can not
be the subject of State taxation.—See that case *ante,* page 284.
In the counts of the amended complaint, it is averred that
the defendant—the national bank—" according to the statute
in such cases made and provided, rendered to the tax asses-
sor of Sumter county a list of property liable to taxation,
and included in said list one hundred thousand dollars, cap-
ital stock, the same being the aggregate of all the shares of
the stockholders in said bank, the taxes upon which were re-
quired, by the statute in such cases made and provided, to
be paid by the defendant for the shareholders thereof."
These counts then aver the amount or rate of taxes that was
levied by the court of county commissioners for county pur-
poses, and continue : "And, by virtue of the premises, the
defendant became liable to pay the plaintiff the sum of
. . . dollars for taxes as aforesaid; that amount being
the amount of taxes due the plaintiff on the aggregate
amount of said shares of stock." The circuit court sus-
tained a demurrer to the complaint, and the plaintiff brings
the case here by appeal.

It is very true, as stated in the case of *The National Com-
mercial Bank v. The Mayor, &c., supra,* that the distinction
between the capital stock of a bank and the shares of stock
in the bank, is somewhat technical; the former being but
the aggregation of the latter. But it is the difference be-
tween the several parts and the whole; between the tributa-
ries and the congregated volume which forms the river; be-
tween the several partners and the aggregated partnership;
between an artificial entity, called a corporation, having a
local habitation and a name, capable of suing and being
sued, and which may survive all the shareholders of any
given period, and the several owners of the shares, who are
commonly real persons, and who may undergo constant
change, by transfer or death, without disturbing or affecting
the continuance or identity of the corporation. They are,
in law, different persons. The policy of denying to the

State legislatures the privilege and power to tax the capital stock of national banks, while expressly granting them the right to tax the shares in such corporations, was a question for the Congress of the United States, not for us.　Ever since the decision in the case of *McCulloch v. Maryland,* 4 Wheat. 316, it has been steadily maintained that such banking institutions are not subject to State assessment for taxes, except as the Congress may grant the privilege. Hence, it is a question of power conferred, not of policy. That the capital stock of banks can not be made a subject of State taxation, see *Bank Tax Case,* 2 Wall. 220; *Van Allen v. The Assessors,* 3 Wallace, 573; *People v. The Commissioners,* 4 Wall. 248; *National Commercial Bank v. Mayor, &c., ante,* 284.　Speaking of the distinction between the capital stock of a bank and the shares in such capital stock, Justice NELSON, in *Van Allen v. The Assessors,* 3 Wall. 583-4, says: "The tax on the shares is not a tax on the capital of the bank.　The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own.　·　·　· The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder, like any other property that may belong to him.　It is this interest which the act of Congress has left subject to taxation by the States, under the limitations prescribed."　For an able discussion of these questions, see Burroughs on Taxation, 120 to 128.

The act of Congress, which authorizes the States to levy and collect taxes on the shares in national banks, is in the following language, Revised Statutes of the United States, section 5219: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by the authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual

citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in any city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations, from either State, county or municipal taxes, to the same extent, according to its value, as other real property is taxed." We think it is difficult to misunderstand the various provisions of this statute. It clearly confers on the several States the power and authority to levy upon *the several shareholders* in a national bank located in the State, a tax, subject only to the two named restrictions, and clothes the legislature of the State with power to determine and direct the manner and place of taxing the shares of all such banking associations located in their respective States. It also requires that the shares of non-resident stockholders shall be taxed in the city or town where the bank is located, and not elsewhere. Under this statute it has been rightly held that the State in which the national bank is located has the exclusive right to derive revenue from the shares of such bank, no matter where the shareholders may have their domicil. It is also settled that the legislature of a State may, by law, make it the duty of the bank to pay taxes thus levied on the shares of the shareholders.—*National Bank v. Commonwealth*, 9 Wall. 355.

It is contended for appellant that the case last cited affirms the validity of the levy and assessment in this case, and shows that the present action is well brought. According to our construction of the language of the court in that case, it is perfectly reconcilable with the language of this court in *National Commercial Bank v. Mayor, &c., supra*, and with all the other cases cited. The tax levied in that case by the legislature of Kentucky was in the following language : "On bank stock, or stock in any moneyed corporation of loan or discount, fifty cents on each share thereof equal to one hundred dollars, or, on each one hundred dollars thereof, owned by individuals, corporations, or societies." This was clearly a levy of the tax on *the shares* of the bank, and not on the capital stock. The statute further provided that "the cashier of a bank, whose stock is taxed, shall, on the first day of July in each year, pay into the treasury the amount of tax due." Speaking of the section levying the tax, first copied, the Supreme Court of the United States, by a unanimous opinion affirming the judgment of the Supreme Court of Kentucky, said : "We entertain no doubt that this provision was intended to tax the shares of the stockholders, and that if no other provision had been made, the amount of the tax would have been primarily collectible of the indi-

vidual or corporation owning such shares, in the same manner as other taxes are collected from individuals. It is clear that it is the shares owned or held by individuals in the banking-corporation which are to be taxed, and the measure of the tax is fifty cents per share of one hundred dollars. These shares may, in the market, be worth a great deal more, or a great deal less than their par or nominal value, as its capital may have been increased or diminished by gains or losses, but the tax is the same in each case. This shows that it is the shares which are intended to be taxed, and not the cash, or other actual capital of the bank." In that case the distinction was carefully drawn between the shares of stock in a bank, and the capital stock. The State had demanded payment of the tax from the bank, and being refused, suit was brought, and a recovery had. The case is an authority for these propositions : First, that national banks, having stock invested in United States bonds, are not subject to taxation on their capital stock, under State authority. Second, that shares in such banks are subject to taxation against the shareholders. Third, that when the State statute authorizes it, the bank may be compelled by suit to pay the taxes so assessed upon the shares; and, fourth, in the absence of such legislative direction, such tax is collectible of the shareholders, in the same manner as other taxes are collected from individuals.

It results from what we have said that the act "to restrict the power of taxation," &c., approved February 23, 1875, Pamph. Acts 49, so far as it may be supposed to relate to the capital stock of national banks, is inoperative.

Should the tax be levied on the *shares* of the stock of the bank, as we have shown it may be, then the only authority for requiring the bank to pay such assessment, is found in subdivision 7, section 369, of the Code of 1876. That section is composed of three paragraphs, separated by semi-colons. The first and third of those paragraphs are clearly unconstitutional, under the principles declared in *Mayor, &c., v. Stonewall Insurance Company,* 53 Ala. 570. We need not re-state the argument. The second clause refers to the first, is dependent on it, and can not have an independent operation, the first being swept away. It relates to the tax authorized by the first paragraph, and to nothing else. Having shown that tax to be unconstitutionally levied, the second clause has no field of operation. Its language is " the same," that is, the tax of seventy-five cents on each share of one hundred dollars of the capital stock of every national banking association, to be in lieu of all taxation, State, county, and municipal, on such shares, "to be paid by each

such association for the shareholders thereof." There is, then, no statute which requires the national banking associations to pay the State tax on the shares of such associations. It follows that such tax can only be assessed under subdivision 13, of section 362, Code of 1876, and can be collected only as taxes against other individuals are collected. This would work an affirmance of the judgment of the Circuit Court, even if the tax had been assessed against the several shares.

Affirmed.

BRICKELL, C. J., dissenting.