# Pollard *v.* The State, *ex rel.* Zuber.

*Petition for Mandamus, by Tax-Assessor against Tax-Collector.*

1. *National banks; constitutionality of.*—National banking corporations, organized under the acts of Congress providing for their creation, are agencies or instruments of the general government, designed to aid in the administration of an important branch of the public service, and are an appropriate constitutional means to that end.

2. *Same; taxation by State.*—As the power to tax necessarily involves the power to impede and defeat the operation of these agencies, if not to destroy their existence, the several States possess the constitutional power to tax them, only at the rate, in the manner, and on the conditions authorized by the acts of Congress, as the law-making power of the general government.

3. *Acts of Congress; judicial construction of.*—In the construction of acts of Congress providing for the creation and organization of national banks, and regulating and limiting the right of the several States to tax them, the State courts are bound by the decisions of the Supreme Court of the United States, even though in conflict with their own precious adjudications.

4. *State taxation of national banks.*—The power of the several States to tax these national banks is, by the express words of the act of Congress (U. S. Rev. Stat. § 5219), "subject to the restriction, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State;" which restriction requires, and only requires, that the amount of tax imposed, and the system of assessment applied to shares of stock in national banks, shall be substantially the same as are imposed and applied to other moneyed capital generally.

5.   *Same; exemption of State bonds; deduction of indebtedness from "money loaned and solvent credits," and for stock invested in other property.*—The provision of the revenue law which exempts from taxation money invested in State bonds (Code, § 358, subd. 2), is sanctioned by the immemorial custom of good faith, financial integrity, and public honesty, a violation of which is not to be presumed to have been intended by Congress, and is not an unfriendly discrimination against capital invested in national banks; but the provisions which authorize the tax-payer to deduct his indebtedness from the amount of "money loaned and "solvent credits," taxing only the excess, and exempt from taxation, of the "capital stock of incorporated companies created under any law of the State," "such portion thereof as may be invested in property and taxed otherwise as property," and limit municipal taxation upon such corporations (*Ib.* § 362, subd. 8, 10), in their operation upon moneyed capital, discriminate unfavorably against shareholders in national banks, and are, to that extent, violative of the act of Congress.

6.   *Same.*—Hence it follows that, prior to the passage of the act approved December 8th, 1880, providing for the taxation of shares in national banks (Sess. Acts 1880–81, pp. 7–8), there was no statute of force here, under the provisions of which a valid assessment of taxes could be made upon shares of stock in national banks; and whether that act is so framed as to harmonize existing provisions of the revenue law with the requirements of the act of Congress (U. S. Rev. Stat. § 5219), as judicially construed, is a question not presented by the record.

7.   *Cases overruled.*—The cases of *McIver v. Robinson* (53 Ala. 456), *Sumter County v. Nat. Bank of Gainesville*, (62 Ala. 464), *Winston v. Sumter Co. Comm'rs*, and *Comm'rs v. Crawford* (at the last-term), relating to the taxation of shares in national banks, are hereby overruled, so far as they conflict with the decision in this case.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This was an application for a *mandamus*, sued out in the name of the State, on the relation of W. D. Zuber, tax-assessor of Montgomery, against Charles T. Pollard, jr., tax-collector of said county, to compel him to collect certain taxes, alleged to have been legally assessed, for State and county purposes, on shares of stock in the First National Bank of Montgomery, and the Merchants' and Planters' National Bank of said city, owned by Benjamin Fitzpatrick and T. J. Alsop, respectively; which, as the petition alleged, he had assessed as property which had escaped taxation during the years 1875 to 1879, both inclusive, and which the said Pollard refused to collect. On the filing of the petition, an alternative writ was issued and served; in return to which, Pollard admitted his refusal to collect the tax as alleged, and justified his refusal under the proviso to the act approved December 8th, 1880, entitled "An act to provide for taxing shares in the capital stock of national banking associations"; alleging that the two banks mentioned in the petition had paid their taxes as required by section 369 of the Code. The proviso to said law is in these words: " *Provided*, that neither the tax-collector nor assessor shall, under the head of escaped taxation, assess or collect, for State, county, or municipal taxation, the shares of such national banks as

have paid the taxes for each year assessed against them under the act approved February 27, 1875, as the same is embodied in subdivision seven (7) of section 369 of the Code."—Session Acts 1880–81, pp. 7–8. The court sustained a demurrer to the return, and awarded a peremptory writ; and these rulings, to which exceptions were reserved, are now assigned as error.

CLOPTON, HERBERT & CHAMBERS, SAYRE & GRAVES, and J. M. FALKNER, for appellant.

RICE & WILEY, GORDON McDONALD, R. M. WILLIAMSON, and EDW. F. JONES, *contra*.

SOMERVILLE, J.—The main question involved in this case is, whether the shares of stockholders in national banking associations, incorporated under the act of Congress, can be lawfully taxed under the revenue laws in force prior to the recent act of the Legislature, approved December 8, 1880, specially providing for such taxation. The proper consideration of this subject necessarily brings under our review the previous decisions of this court, relating to State taxation of these institutions, and the extent of their modification, as required by recent adjudications of the United States Supreme Court. The latter tribunal must, of constitutional necessity, be the legal forum of last resort for the determination of questions of this character, which are Federal in their nature.—Cooley's Constitutional Lim. 12; *Cohens v. Virginia,* 6 Wheat. 264. We have sought to give the matter that research and deliberate consideration, to which its importance, and the magnitude of the interests involved, justly entitle it.

It now seems settled, by authority no longer capable of judicial disputation by the State courts, that the national banks are agents or instruments of the general government, designed to aid in the administration of an important branch of the public service, and they are appropriate means to that end, constitutionally authorized, as a proper exercise of the incidental or implied powers of Congress.—*Farmers' Nat. Bank v. Dearing,* 91 U. S. 29; *McCulloch v. State of Maryland,* 4 Wheat. 316; Ball on National Banks, 216.

Whether the power to tax these corporate associations is derived from express legislative permission of Congress, or whether it is an original and inherent attribute of State sovereignty, liable only to be regulated and restrained by Congress, is not material to be here determined, and is a question about which there have been conflicting views among

the various courts.—*State v. Newark*, 40 N. J. 558 ; *Ruffin v. Commissioners*, 69 N. C. 498 ; *People v. Weaver*, 100 U. S. 539. As the power to tax, however, necessarily involves the power to impede and defeat the operations of these agencies, if it does not include virtually the power to destroy their existence, the several States possess the constitutional power to tax them, whether originally or by derivation it matters not, only at a rate, in the manner, and on the particular conditions authorized by Congress, as the only law-making power of the general government under the Federal constitution.—*Sumpter Co. v. National Bank*, 62 Ala. 464 ; *National Bank v. Mayor &c. of Mobile, Ib.* 284. It was asserted by Chief-Justice MARSHALL, in *McCulloch v. State of Maryland, supra*, as a proposition not to be denied, that "the power to tax involves the power to destroy ; [and] that the power to destroy may defeat and render useless the power to create." "The States have no power," he said, "by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government."—*Ib.* 436. In *National Bank v. Commonwealth*, 9 Wall. 353, it was said, that the doctrine which exempts the instrumentalities of the Federal government from the influence of State legislation, is not founded in any express provision of the constitution, but on "the implied necessity for the use of such instruments by the Federal government."

These conditions of State taxation have been designated by Congress in the form of enactments, wh ch plainly limit and regulate the right to tax. The act of Congress of February 10, 1868 (embodied in section 5219 of the Rev. Stat. U. S.), thus provides : "The legislature of each State may determine and direct the manner and place of taxing all the shares of national banks located within said State, subject to the restriction that the taxation *shall not be at a greater rate than is assessed upon* OTHER MONEYED CAPITAL *in the hands of individual citizens of such State.*"—15 Stat. at Large, 34.

This is a law of the general government ; and it is too well settled to require the citation of any supporting authority, that the courts are bound conclusively by such construction as may be given it by the Supreme Court of the United States, even though such construction be antagonistic to their present judicial convictions, or even in conflict with previous adjudications frequently re-affirmed.

State taxation, under this statute, is forbidden to be "at a greater rate than is assessed upon *other moneyed capital* in the hands of individual citizens of the State." This clause is construed to forbid any unfavorable discrimination in taxa-

tion against national banks, and to prohibit any system of assessment of taxes which exacts from the owners of shares in such corporations a larger sum, in proportion to their value, than it exacts from the owners of "other moneyed capital."—Ball on National Banks, 215–24; *Pelton v. Nat. Bank*, 101 U. S. 79; *People v. Commissioners*, 4 Wall. 256.

In *Lionberger v. Rouse*, 9 Wall. 468, it was held, that the particular design of this act was to restrain the States from "*legislating adversely* to the interests of the national banks," and that "there should be no *unfavorable discrimination* against them."

In *Adams v. Nashville*, 95 U. S. (5 Otto), 19, its purpose was asserted to be, to "protect" these corporations, organized under Federal authority, from "*unfriendly discrimination* by the States in the exercise of their taxing power."

In *Pelton v. National Bank*, 101 U. S. (11 Otto), 143, it was held, that "any system of assessment of taxes, which exacts from the owner of the shares of a national bank a larger sum, in proportion to their *actual value*, than it does from the owner of other moneyed capital *valued in like manner*, does tax them at a greater rate within the meaning of the act of Congress."

The Supreme Court of Massachusetts said, in reference to this enactment, in the case of *Providence Institution v. City of Boston*, 101 Mass. 575, as follows; "It means merely, as we think, that such shares shall be taxed upon a *general system*, and in compliance with a set of rules and principles, applied alike throughout the State to the taxation of all moneyed capital. It means that the rate upon a thousand dollars, invested in such bank, shall be the same as the rate upon a like sum put at interest on good security; that, as far as mere taxation is concerned, the owner of the one investment shall fare neither better nor worse than the ascertained owner of the other; that banks are not to be oppressed or incommoded, nor their operations as agencies of the general government to be prevented or impeded, by invidious or unfavorable rates, as compared with other property of the same general kind, and in the same place."

In *Wright, Auditor &c. v. Stilz*, 27 Ind. 338, the Supreme Court of Indiana decided, that the shares of national banks could not be taxed under the laws of that State, because no such municipal tax as the discriminating one there in question was imposed upon the shares of banks organized under the authority of *the State*; and this conclusion was re-affirmed in *Craft v. Tuttle, Ib.* 332. The ground of these decisions, manifestly, is, that this system destroys that equality of taxation designated to be secured in favor of these governmental

[Pollard v. The State, ex rel. Zuber.]

agencies, and, to this extent, works an unjust discrimination against them.

The most important construction of this act of Congress, however, which has yet been promulgated by the United States Supreme Court, is found in the case of *People v. Weaver*, 100 U. S. (10 Otto), 539. It is there said, that this Congressional restriction on the power of State taxation is "manifestly designed to prevent taxation which should discriminate against this class of property, as compared with other moneyed capital." It was held, that the act obviously had reference to "*the entire process of assessment,*" including "the *valuation* of the shares, as well as the *rate* of percentage charged thereon"; and a statute of the State of New York was pronounced invalid, on the ground that it did not allow the plaintiff " the same *deduction for debts* due by him, from the valuation of his shares of national-bank stock, that it allowed to those who have moneyed capital otherwise invested."

The assessment in the case at bar was made, and the tax levied, under the provisions of sections 362 and 369 of the Code of 1876. The question to be determined is, whether the system of assessment, and the amount of the tax imposed, under these sections, on moneyed capital generally, is the same substantially, in effect, when applied to shares in national banks.

It is first objected, that section 358 of the Code, sub-div. 2, exempts entirely from taxation moneyed capital invested in *State bonds*, and that this fact, of itself, is unequal and discriminating as against moneyed investments in national bank shares, because it imposes a burden on the latter, from which it expressly relieves the former. This view seems to be sustained by a strong intimation of Justice MILLER, in *People v. Weaver, supra*; but we are not disposed to concur in the conclusion. The suggestion by him is a mere judicial *dictum*, used *arguendo*, by way of illustration, and was not a point arising for decision in the case. The tendency of the decisions, we think, is strongly to the contrary. It was said br Justice HUNT, in *Adams v. Nashville*, 95 U. S. 19, *supra*, that these acts of Congress were not intended to curtail the power of the States on the subject of taxation, or *to prohibit the exemption of particular kinds of property.*" And again, by Chief-Justice WAITE, in *Hepburn v. School Directors*, 23 Wall. 480 (485), that a State tax law was not violative of the act of Congress, merely on the ground that it allowed " a partial exemption " of a certain kind of moneyed capital, which was designed to prevent a double burden of taxation, both of property and debts secured by it. " It could not have been

the intention of Congress to exempt bank shares from taxation," it was said, "because some moneyed capital was exempt." In *People v. The Commissioners*, 4 Wallace, 244, an assertion by Justice NELSON was emphasized, to the effect that it would be a sufficient compliance with the act, if the rate of State taxation should be the same, or not greater than on the moneyed capital of individual citizens "*which is subject or liable to taxation.*" And this view has been fully indorsed by the Supreme Court of Pennsylvania in a recent case (*Everitt's Appeal*, 71 Penn. St. 216), holding that the act of Congress had no reference to property exempted from *all* taxation. But, without undertaking to decide this particular point, we feel fully justified in concluding, that there was no intention on the part of Congress to require the taxation of State bonds. The purpose of the law is accomplished, when the States conform, as far as practicable, their revenue systems to its requirements substantially; and it must not be construed to intend that any State shall do what the general government has itself declined to do, as unsanctioned by the immemorial custom of good faith, financial integrity, and public honesty.—*Lionberger v. Rouse*, 9 Wall. 468, 475.

There are, however, other features in the State revenue law, which are productive of manifest inequality in taxation, as against share-owners in national banking associations. Section 362 of the Code (sub-div. 8 e) enumerates, among other subjects of taxation, "all *money loaned,* and *solvent credits,* or credits of value." That these subjects are comprised under the head of "moneyed capital," can not be questioned.—*Hepburn v. School Directors*, 23 Wall. 480. It is provided, that the tax-payer shall be permitted to "deduct his *indebtedness*" from these credits, and "the *excess* only shall be taxed." This privilege of deduction is granted only to the owners of this particular class of moneyed capital, and is withheld from the owners of shares in national banking corporations. This was the precise point on which the New York statute was pronounced violative of this act of Congress, in *People v. Weaver, supra.* In that case (100 U. S., 10 Otto, 539), it was objected, that the effect of the State law was to "permit a citizen of New York, who has moneyed capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation, while he whose money is invested in shares of bank stocks can make no such deduction." Said the court : "Nor, inasmuch as nearly all the banks in that State, and in all others, are national banks, can it be denied that the owner of such shares, who owes debts, is subjected to a heavier tax on account of those shares than the owner

of moneyed capital otherwise invested, who also is in debt; because the latter can diminish the amount of his tax, by the amount of his indebtedness, while the former can not. *That this works a discrimination against the national-bank shares, is also free from doubt.*" Such being the case, the same discriminating feature must prove equally fatal to our own revenue system, as contained in the Code, so far as applicable to the taxation of "moneyed capital" invested in national banks.

Sub-division 10 of section 362 of the Code taxes the capital stock of all incorporated companies, created under any law of the State, on a principle more favorable than that adopted in reference to national banks. A deduction, or exemption, is allowed for such portion of the capital stock as may be invested in property, and taxed otherwise as property; and immunity from municipal taxation, except a license tax, is secured, in consideration of the payment of a fixed and limited percentage. Whether this immunity is not void, as being violative of that equality of taxation required by the State constitution, on the principle declared in *Sumter Co. v. National Bank*, 62 Ala. 464, is a point not necessarily raised for our determination. It is palpable, however, that, under the operation of section 362, clause 10, and section 358, clause 9, the real estate owned by national banks is taxable, and no deduction on this account is allowed in their favor; but such deduction is allowed in favor of incorporated companies created under State laws, which might, of course, include State banks.—*National Bank v. Mayor &c. of Mobile*, 62 Ala. 284; Rev. Stat. U. S., § 5219.

It is justly urged, that the effect of taxation under these sections is to operate with unfavorable discrimination against national banks. If, for example, a State bank possess a capital of $100,000, and one half of that capital is invested in *real estate*, such bank will be subject to taxation on $50,000 only of its capital stock. A national bank, with the same amount of capital, invested in the same manner, is required to pay the same amount of tax on real estate as that exacted from the State bank, and also an additional tax, indirectly through the share-holders, on the whole capital stock of $100,000. No diminution in their favor is allowed, on account of the tax imposed on real estate owned by them, as permitted in favor of State corporations. This would be an assessment tantamount to precisely double that required to be paid on the capital stock of a State bank. The process of assessment, on the *capital stock*, in the one case, and on the shares in the other, operates with objectionable partiality. The deduction of the value of real estate owned in the one case,

and its denial in the other, is discriminating. These sections are in clear conflict with the act of Congress, so far as applicable to national banks.—*Collins v. City of Chicago*, 4 Biss. 272; *National Bank v. Papin*, 4 Dill. 29; *National Bank v. Young*, 25 Iowa, 311; Cooley on Taxation, 394–5; *Adams v. Mayor*, 95 U. S. 19.

Under the authority, therefore, of these adjudged cases, construing the act of Congress under discussion, we feel impelled to hold, that sections 362, 369 and 358, in the provisions of the clauses mentioned, apply a process of assessment and a rate of taxation unequal in their operation on moneyed capital in the hands of individual citizens, including State corporations, and on national banks, unfavorably discriminating against the latter to an extent violative of the act of Congress.

It follows, then, that prior to the passage of the recent act of the legislature, entitled "An act to provide for taxing shares of the capital stock of national banking associations," approved December 8, 1880, there was no statute in this State, under the provisions of which a valid assessment of taxes could be made on such shares, as tested by the case of *People. v. Weaver*, *supra*, and other decisions of the United States Supreme Court.

Whether the recent act is so framed as to harmonize existing provisions of the Code, with the requirements of section 5219 of the U. S. Revised Statutes, is a question which is not necessarily presented for consideration by the record, and is, therefore, left undecided in this case.

It is needless to reiterate, that the foregoing exposition of the Federal enactment in question is conclusive on this court; and, under its influence, we are constrained to overrule the conclusions reached adverse to these views, in *McIver v. Robinson*, (53 Ala. 456), *Sumter Co. v. National Bank of Gainesville* (62 Ala. 464), *Winston v. Sumter County Commissioners*, and *Sumter Co. Comm'rs v. Crawford*, at the last term.

The Circuit Court erred in overruling the demurrer of appellant, and in granting the application for the writ of *mandamus*. Its judgment is hereby reversed, and judgment rendered here dismissing the proceedings, with costs.

BRICKELL, C. J. not sitting.

NOTE BY REPORTER.—The cases of *Sumter Co. Comm'rs v. Winston*, and *County Comm'rs v. Crawford*, above referred to, ought to have appeared in this volume, and they are not published because overruled, as above stated.