## Boyer's Appeal.

1. As long as a state restricts the taxation of shares of national bank stock to the same kind and degree of taxation that it imposes upon similar capital belonging to its citizens or its own institutions, it does not violate the Act of Congress of February 10th 1868 (§ 5219 R. S. U. S.), forbidding the taxation of national bank shares "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such states."

2. The fact that other species of "moneyed capital" in the hands of individual citizens of the state, are exempted from local taxation, to an amount greater than that of the capital stock of the national banks located in said state, will not exempt the shares of national bank stock from such taxation under Act of February 10th 1868 (§ 5219 R. S. U. S.). If, however, such exceptions are carried so far as to indicate a decided legislative preference on the part of the state in favor of the exemption of other kinds of moneyed capital, the case would come within the prohibition refered to.

3. Hepburn v. School Directors, 23 Wallace 480, followed.

4. The county tax for 1883, levied in this case on shares of national bank stock, held not to be illegal.

April 19th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from a decree of the Court of Common Pleas of *Schuylkill county:* Of July Term 1883, No. 33.

This was an appeal by Francis W. Boyer from a decree of the said court sustaining a demurrer to, and dismissing a bill in equity, filed by said Boyer praying for an injunction to restrain the commissoners of Schuylkill county, defendants, from levying a tax on ten shares of National Bank stock held by said Boyer.

The following is an abstract of the bill :

1. That plaintiff is a resident of Pottsville, in Schuylkill county, and is the owner of ten shares of capital stock of the

Pennsylvania National Bank, an association located in said borough, and organized under the National Banking Act of 1864.

2. That defendants are the county commissioners, and are about to levy a county tax for 1883 upon said shares of stock.

3. That by section 5219 of the revised Statnes of the United States it is provided with reference to national banks:—

" Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located ; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national Banking associations located within the state, subject only to two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or county where the bank is located and not elsewhere."

4. That the Act of Assembly of Pennsylvania approved 31st March 1870 (P. L. 43), provides : " That all the shares of national banks . . and of banks and saving institutions . . shall be taxable . . . for county, school, municipal and local purposes at the same rate as now is or may hereafter be assessed and imposed upon other moneyed capital in the hands of individual citizens of the state."

5. That by Act of Assembly of Pennsylvania (3d January 1868, P. L. 1318) it is provided that the shares of stock held by any shareholder in any institution or company incorporated under the laws of this state which, in its corporate capacity is liable to and pays into the state treasury taxes on capital stock, shall not be liable in the hands of said stockholder personally for county or local taxation.

(a.) That for the year 1881, as is shown by the public report and by the books of the Auditor-General of Pennsylvania, the sum of $1,692,938.66 was paid into the state treasury as tax upon the capital stock of such corporations by them in their corporate capacity, which sum of money was paid upon a gross capital stock, of the corporations paying the same, of the value, approximately stated, of $564,000,000.

(b.) That it appears as is shown by the books and published report of the secretary of internal affairs for the year 1881, that the total valuation throughout the state for that year of " all mortgages, money owing by solvent debtors whether by promissory note, penal or single bill, bond or judgment, also all articles of agreement and accounts bearing interest owned or

possessed by any person or persons whatsoever (except notes or bills for work or labor done and all obligations given to banks for money loaned and bank notes) and all public loans or stocks whatsoever, except those issued by this state or the United States, and all moneys loaned or invested on interest in any other state and all other moneyed capital in the hands of individual citizens of the state," amounts to $74,931,665; and that

(c.) For the same year, as is shown by the books and published reports of the Auditor-General, a tax was paid into the state treasury upon corporation and municipal loans, not probably included in the foregoing sum, upon an aggregate valuation of $51,404,162.50.

6. That by the provisions of section 1 of the Act of 10th June 1881 (P. L. 99), all mortgages, judgments and recognizances whatsoever and all moneys due or owing upon articles of agreement for the sale of real estate were exempt from all taxation except for state purposes.

7. That the section 2 of said Act of 1881 exempts from local taxation in the hands of the holders thereof, all loans issued by corporations paying interest thereon where such corporations pay into the state treasury the state tax of 4 mills on each dollar thereof (see above c), and by Act of 1st May 1854 (P. L. 535) " all bonds or certificates or indebtedness of any railroad company incorporated by this Commonwealth be and the same shall be liable to taxation for state purposes only.

8. That the total paid-in capital of all the state banks and savings institutions in said Commonwealth, other than national banks, as appears by the books and published reports of the Auditor-General for the year 1881, is $7,161,740.68, while the total paid-in capital of the national banks located within said state in said year amounted to $57,452,051.

The plaintiff prayed for an injunction restraining the defendant from levying said tax.

The defendant filed a general demurrer to the bill, which was sustained by the court and the bill dismissed. (No opinion filed.) The plaintiff thereupon took this appeal, assigning for error the action of the court in sustaining the demurrer and in dismissing his bill.

*Charles W. Wells*, for the appellant.—The state of Pennsylvania cannot authorize the taxation of shares of national banks, except to the extent to which it is authorized by the Acts of Congress: McCullough *v*. Maryland, 4 Wheat. 316 ; Osborn *v*. Bank, 9 Wheaton 738. These allow taxation by the state government only provided it be " not at a greater rate

than is assessed upon other moneyed capital in the hands of individual citizens of such state:" § 5219 R. S. U. S.  The important question, then, in this case is, at what rate is "other moneyed capital" taxable for local purposes in Pennsylvania? We claim that substantially it is not taxable at all for local purposes: The vast bulk of moneyed capital is exempted from such taxation, while only an insignificant portion thereof, not greater than five per cent., is now taxable under our state laws. The amount of "moneyed capital," exempted from local taxation by the state of Pennsylvania is, as set forth in our bill, as follows:

| | | |
|---|---|---:|
| Paragraph 5, divison (a) | . . . . | $564,000,000 |
| "   "   "   (b) | . . . . . | 65,000,000 |
| "   ."   "   (c) | . . . . | 51,000,000 |
| | Total exempt . . . . | $680,000.000 |
| | Capital of Penna. Nat. Banks . | 57,452,051 |

We contend that the rate at which "other moneyed capital" is taxed in Pennsylvania must be determined by the rate at which the vast bulk, in this case 95 per cent. thereof, is taxed.  It is not the spirit or letter of the Act of Congress that national bank stock should be taxed, if 5 per cent. of the "other moneyed capital" is so taxed, and 95 per cent. is exempt.  When Congress spoke of "other moneyed capital," it meant the corpus or vast bulk of such capital and not a minute portion of it.  But a better reason is to be drawn from the purposes of Congress in creating the restriction under consideration.  Its purpose undoubtedly was to protect national banks from unfair discrimination; its creature, its instrumentality, was not to be taxed to death by the state, nor even taxed to its injury as contrasted with other moneyed capital.  Equality (perfect equality, if attainable: DAVIS, J., in Lionberger v. Rouse, 9 Wallace 468) with other moneyed investments of the citizens of the states—no greater taxation than that which the citizens of the states impose upon themselves—this was the rule by which protection was to be afforded to this national agency.

But this purpose of Congress will be wholly lost if the position taken by the appellants here be not the correct one.  If the legislature can tax five per cent. of the moneyed capital in the hands of the citizens of the state at a high rate and exempt the other ninety-five per cent., then it can without difficulty tax national banks out of existence.  If the Act of Congress means "other moneyed capital which is taxed by the law of the state," then it will be perfectly easy for a state to tax some insignificant stock at a rate practicably destructive, then impose the same rate upon national bank shares and thus destroy the

national banking system. For instance, Pennsylvania might impose a tax of ten per centum per annum upon the shares of canal company stock, exempt all other moneyed capital and then tax national banks at the same rate as the canal companies. A construction which produces such a result cannot be right and we have then the converse as the only alternative.

No case can be found in the books raising precisely the same question as is raised in the case at bar. In several cases the subject has been under discussion by the supreme court of the United States and by other courts, but always in cases where taxation of other moneyed capital was the rule and exemption was the exception, whereas here the fact is precisely the opposite, exemption is the rule and taxation the exception. The leading case of those referred to is Hepburn v. School Directors of Carlisle, 23 Wallace 480. In this case WAITE, C. J., said : " This is a partial exemption only. Necessarily, there may be other moneyed capital in the locality than such as is exempt. If there is, money capital as such is not exempt. Some part of it only is. It could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital is exempt." And this is commented upon and explained in City Nat. Bank v. Paducah, 1 Thompson's Nat. Bank Cases 309, as follows : " In the case of Hepburn v. School Directors it was held that the exemption of small amounts of moneyed capital, in particular cases, would not invalidate the tax, if the great body of money capital was subjected to it. However, the amount exempted was small in proportion to the aggregate amount of moneyed capital, and the great mass of moneyed property was subjected to the same tax levied upon the shares of national banks." See also Everitt's Appeal, 71 Penn. 216 ; Lionberger v. Rouse, 9 Wall. 468 ; People v. Weaver, 100 U. S. 539 ; Cummings v. Bank, 101 U. S. 153.

We also contend that this tax is in violation of the 14th Amendment to the Constitution of the United States and of Art. IX. § 1, of the Constitution of Pennsylvania. The equal protection of the former is denied by a state, where it discriminates in taxing between state and national banks. The amendment forbids unequal taxation : San Mateo Case, 13 Fed. Rep. 722. What is prohibited by clear implication in the amendment is expressly forbidden in Art. IX. § 1, of the state constitution, and a law which exempts 95 per cent. of moneyed capital and taxes 5 per cent. is clearly in violation of both.

*A. W. Schalck*, county solicitor, for the appellee.—The only question involved here is the rate of taxation, so that national bank shares shall not be taxed at a greater rate, &c. It never can be a question as to which particular items of mon-

eyed capital are taxed, and which are exempted, and the respective amounts thereof. No court ever applied such a criterion, nor can any court apply such a rule, for there are no sufficient data to be had whereby to gauge it. It necessarily must and does vary every year, as investments are made or changed, and as each successive legislature may see proper, either to tax or to exempt this or that species of moneyed capital, for state or local purposes, or both, or either: Everett *v.* Steele, 3 Leg. Gazette 308; S. C. 21 P. F. S. 216; Gorgas' Appeal, 29 P. F. S. 149; Carlisle School District *v.* Hepburn, 29 P. F. S. 159; S. C., 23 Wallace 485; Adams *v.* The Mayor of Nashville, 95 U. S. Rep. 19.

Mr. Justice GORDON delivered the opinion of the court, May 21st 1883.

The argument of the counsel for the plaintiff in error, in this case, seems to be but a repetition of that found in Hepburn *v.* The School Directors, 23 Wall. 480. It was there urged that no municipal or school taxes could be assessed, under the revised statutes of the United States, upon the shares of the First National Bank of Carlisle, because, as was shown, all mortgages, judgments, recognizances and money owing upon articles of agreement for the sale of real estate, were, by the state laws, exempted from such taxes. But in answer to this, Mr. Chief Justice WAITE said, that this was but a partial exemption. That it did not follow that there was not other moneyed capital that was not so exempt, and that it could not have been the intention of congress to relieve bank shares from taxation merely because some moneyed capital was exempt.

Nor of less force, as revealing the intention of Congress, as interpreted by the United States judiciary, is the case of Lionberger *v.* Rouse, 9 Wall. 468, wherein Mr. Justice DAVIS, in commenting on the 41st section of the Act of Congress of the third of June 1864, gives it as his opinion, and alleges that it is very clear, that congress, in conceding to the states the right to tax national banks, adopted a measure which it was supposed, would restrain them from legislating adversely to those institutions. He says further, that this object was accomplished when the states, as far as practicable, so arranged their systems of taxation as to adapt them to the intention thus expressed.

As subsequent decisions of the supreme court of the United States in no degree conflict with those cited, we must adopt them as containing a correct exposition of the doctrine of that court, upon the subject in hand. But the case of Hepburn *v.* The School District seems to embody the very contention which we have now before us. There, as here, it was said, as the state has exempted from local taxation mortgages, judgments, and

other moneyed capital in the hands of individual citizens, therefore, the shares of national banks must, in like manner, be exempted. But here, as there, we may answer; this exemption, by your own showing, is but partial. Not only is some other moneyed capital of a miscellaneous character taxable for local purposes, but all such capital of the same character as that which you desire to exempt; that is to say, the shares of state banks, and savings institutions.

We must, therefore, regard the authorities quoted as settling the principle, that as long as a state restricts the taxation of national banks, to the same kind and degree of taxation that it imposes upon similar capital belonging to its citizens, or its own insitutions, it does not discriminate against those banks, and, therefore does not violate the provisions of the Act of Congress. In this we fully agree with the case of the People v. Weaver, 10 Otto 539, that no discrimination against the capital invested in national banks can be allowed; if taxed at all, it must be taxed as is like capital of the citizens of the state. But in the case now in hearing, our attention has not been called to any such discrimination as apparent from the laws of this commonwealth. The general assembly has authorized the taxation of the shares of these banks in no other manner, and at no higher rate than other capital of a similar character. It is true that certain investments, such as judgments and the like, have been exempted; these, however, are but partial exemptions, and it cannot be justly alleged that either in intention or in effect is this legislation specially adverse to these banks.

It is certainly true that these exemptions may be carried so far as to indicate a decided legislative preference to other kinds of moneyed capital, and a consequent discrimination against that of national banks. But when this occurs these institutions can claim exemption, but not till then. As long as they are allowed to stand upon the same footing with the citizen and similar state institutions in the matter of taxation they have no right to complain.

　　　　　　　The decree of the court below is now affirmed at the
　　　　　　costs of the appellant.